Francis H. **PREGENT**

v.

**NEW HAMPSHIRE DEPARTMENT OF EMPLOYMENT SECURITY and Benjamin C. Adams, Commissioner of Employment Security.**

**Civ. A. No. 72-160.**

United States District Court,
D. New Hampshire.

July 11, 1973.

H. Neil Berkson, New Hampshire Legal Assistance, Keene, N. H., for plaintiff.

Joseph Stewart, State of New Hampshire, Dept. of Employment Security, Concord, N. H., for defendants.

Before McENTEE, Circuit Judge, and GARRITY and BOWNES, District Judges.

## OPINION

BOWNES, District Judge.

This is a civil rights action brought pursuant to 42 U.S.C. § 1983 alleging the deprivation of rights secured to the plaintiff by the Fourteenth Amendment to the United States Constitution and by Section 303(a)(1), (3) of the Social Security Act of 1935, as amended, 42 U.S.C. § 503(a)(1), (3)[1] and 26 U.S.C. § 3304(a)(5)(B).[2] Plaintiff seeks a declaratory judgment pursuant to 28 U.S.C. §§ 2201 and 2202 declaring NH RSA 282:3, subd. C,[3] both facially and as applied, to be in violation of the Due Process Clause of the Fourteenth Amendment and the determination procedures set forth in NH RSA 282:5, subd. B and 282:5, subd. C to be in violation of the Fourteenth Amendment and the Social Security Act and seeks a permanent injunction preventing enforcement of these provisions.[4] Jurisdiction is based on 28 U.S.C. § 1343(3, 4).

1. Section 303(a) of the Social Security Act, 42 U.S.C. § 503(a), provides:

(a) The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

(1) Such methods of administration (including after January 1, 1940, methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary of Labor shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Secretary of Labor *to be reasonably calculated to insure full payment of unemployment compensation when due*; [Emphasis added.]

\* \* \* \* \*

(3) Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied;

\* \* \* \* \*

2. 26 U.S.C. § 3304(a)(5)(B) provides:

(a) Requirements.—The Secretary of Labor shall approve any State law submitted to him, within 30 days of such submission, which he finds provides that—

\* \* \* \* \*

(5) compensation shall not be denied in such State to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

\* \* \* \* \*

(B) if the wages, hours, or other conditions of the work offered are substantially less favorable to the individual than those prevailing for similar work in the locality;

\* \* \* \* \*

3. See Appendix to this Opinion for the pertinent sections of New Hampshire Revised Statutes Annotated (hereinafter called NH RSA).

4. No request for a temporary restraining order was made in the original complaint. Plaintiff's motion for this case to proceed as a class action under F.R.Civ.P. 23(b)(2) was denied.

A Three-Judge Court was duly convened[5] as required by 28 U.S.C. §§ 2281 and 2284, and a hearing was held on May 25, 1973.

The following three constitutional issues have been raised:

First, whether a pretermination fair hearing is constitutionally required by the Due Process Clause of the Fourteenth Amendment and statutorily required by 42 U.S.C. § 503(a)(1)[6] where the New Hampshire Department of Employment Security (hereinafter called D.E.S.) seeks to suspend payment of unemployment compensation benefits because it has determined that a person who was *initially eligible* to receive unemployment compensation benefits has *since* become ineligible.

Second, whether the procedures by which the determination to terminate unemployment compensation benefits is made and by which post termination Appeal Tribunal hearings are conducted violate the Due Process Clause of the Fourteenth Amendment and deny the plaintiff a "fair and impartial hearing" in violation of 42 U.S.C. § 503(a)(3).[7]

Third, whether NH RSA 282:3, subd. C which defines "availability" is void for vagueness, either on its face or as applied, under the Due Process Clause of the Fourteenth Amendment.

The issue of the plaintiff's alleged entitlement to unemployment compensation benefits will not be decided by this court. NH RSA 282:5, subd. G(3) clearly indicates that the resolution of this issue is properly one for the state courts.

### THE FACTS

Most of the essential facts have been stipulated.

Plaintiff, Francis H. Pregent (hereinafter called claimant), was sixty-six years old on June 11, 1971, when he was laid off from his job as an assistant shipping clerk with the Claremont Flock Corporation, Claremont, New Hampshire, because of a consolidation and reorganization of jobs within the company. For eight years prior to June 11, 1971, he had worked for the Claremont Flock Corporation as an assistant shipping clerk and was earning approximately $2.20 per hour at the time of his layoff. Prior to his job with the Claremont Flock Corporation, claimant had worked as a machine worker for various shoe companies, as a weaver and machine worker for woolen mills, and as a restaurant manager and owner. He had been working steadily, except for short periods of unemployment, since the age of fifteen.

On June 14, 1971, claimant filed a claim for unemployment benefits with the Claremont Office of the New Hampshire Department of Employment Security. On that same day, he also registered with the Employment Service of the D.E.S. The Employment Service is supposed to take the initiative in providing registrants with counselling and testing and in referring registrants to prospective employers. At the time that Pregent applied for benefits, he was given a "Rights and Obligations" pamphlet (Pl. Ex. 3) prepared by the D.E.S. which contained the following pertinent provisions:

\* \* \* \* \* \*

TO BE ELIGIBLE TO RECEIVE BENEFITS WITH RESPECT TO ANY WEEK:

5. You must be ready, willing and able to accept and perform suitable work on all the shifts, and

---

5. Prior to the convening of a Three-Judge Court, an evidentiary hearing was held on February 9, 1973, before a single judge of the District Court of New Hampshire when that judge was under the mistaken impression that a Three-Judge Court was not required. The parties and the court

have agreed that the transcript of that hearing could be used and considered by the Three-Judge Court.

6. See footnote 1, *supra*.

7. See footnote 1, *supra*.

during all the hours for which there is a market for the services you offer and you must expose yourself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work.

\* \* \* \* \* \*

YOU WILL BE DISQUALIFIED FOR BENEFITS:

5. If you fail, without good cause, either to apply for available, situable work when so directed by the employment office or the Commissioner or to accept suitable work when offered you, or to return to your customary self-employment (if any) when so directed by the Commissioner.

Plaintiff's claim for unemployment compensation was approved by the D.E.S. The initial four weeks of unemployment benefits were denied, however, because claimant received four weeks of vacation and notification pay from the Claremont Flock Corporation. Thereafter, with the exception of the week ending September 25, 1971,[8] Pregent received weekly unemployment benefits from July 11, 1971, through January 15, 1972. The Employment Service provided no counselling, testing, or job referrals to the claimant between June 14, 1971, and January 18, 1972.

Claimant requested that the D.E.S. assist him in trying to find work. On January 18, 1972, the Employment Service referred him to a part time night watchman's job in the Claremont area. Immediately after receiving this referral, claimant went to Davis and Symonds Lumber Company to discuss potential employment as a night watchman. He spoke with various employees of the company. On three separate occasions the claimant went to Davis and Symonds but was never able to speak

with Mr. Munroe, the person in charge of personnel to whom he had been referred. During this same period, plaintiff spoke with two attorneys in Claremont, New Hampshire, one of whom was District Court Judge for Claremont, and the other of whom was and is County Attorney for Sullivan County. Both attorneys advised the claimant that, because of his age, physical condition, and previous experience, the night watchman's job would be quite dangerous because the company in question employed persons with criminal records who were known to get into fights and that these persons and their friends tended to frequent the company premises during the early morning hours when the plaintiff, if he was hired for the job, would be working. On January, 25, 1972, the claimant advised Mr. Blair, an interviewer with the D.E.S., in writing that "[d]ue to the fact that Davis and Symonds is a dangerous place to work, my lawyer advised me not to take a job there." (Pl. Ex. 2). On January 28, 1972, claimant received initial notification of disqualification from benefits in a written determination by Emmett E. Williams, Jr., certifying officer of the D.E.S. (Pl. Ex. 1). Williams notified claimant in writing of the reasons for denial of benefits, as follows:

On 1/19/72 you were given a referral to Davis & Symonds Lumber for a job as watchman. You returned the introduction card and stated that your lawyer had told you not to take the job. Davis & Symonds indicated they had no application and no knowledge of your having been there for an interview. On 1/25/72 you stated that Davis & Symonds was a dangerous place to work, and your lawyer had advised you not to take the job. You declined to provide further information, but stated we should call your attorney.

8. On September 28, 1971, Pregent filed a total claim for the weeks ending September 18 and September 25, 1971. However, because he failed to make a claim on September 21, 1971, at his normally scheduled time, benefits were disallowed for the week ending September 25, 1971. This denial of benefits for the week ending September 25, 1971, is not in issue in this case.

On the basis of the interviewer's findings, the certifying officer determined that claimant had refused to apply for suitable work and denied him benefits for the week of occurrence and for the three following weeks through February 12, 1972. This determination was in accordance with NH RSA 282:4, subd. M, which authorizes a four-week denial of unemployment compensation benefits when there has been a finding that available, suitable work, as defined in the statute, has been refused without good cause. The certifying officer further determined that claimant placed limitations on his availability which removed him from the normal labor market and, therefore, disallowed all benefits from January 19, 1972. This second finding of "unavailability" pursuant to NH RSA 282:3, subd. C, as distinct from the finding of "refusal to apply for suitable work," carries with it an indefinite termination of unemployment benefits. Claimant's benefits were immediately terminated, retroactive to January 19, 1972.

Mr. Williams, the certifying officer, testified that he did not call claimant's attorney to get any further information with regard to the alleged danger of the night watchman's job despite claimant's request that he do so. Williams made no written findings of fact, either prior to or subsequent to his determination, as to whether the night watchman's job was "suitable" for the claimant in accordance with NH RSA 282:4, subd. M(1)(a)–(g). Williams did not and does not know what the prevailing weekly wages in the Claremont, New Hampshire, area are. Williams testified that the prevailing weekly hours in the locality range from thirty-seven to forty-eight, depending on the type of job. Williams did not know what the weekly wages for the night watchman's job were nor did he know what the working hours were. He did state, however, that the job was part time and that, therefore, the weekly hours would probably be less than thirty-seven.

NH RSA 282:3, subd. C states that:

An unemployed individual shall be eligible to receive benefits with respect to any week only if the commissioner finds that:

C. He is ready, willing and able to accept and perform suitable work on all the shifts, except that women shall not be disqualified for refusing to accept work during the hours of the so-called third shift, and during all the hours for which there is a market for the services he offers and that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work.

The D.E.S. has no regulations, instructional or policy memoranda, or guidelines of any kind which create any standards for determining exposure to employment "to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work."

The plaintiff took a timely appeal of Williams' decision to the Appeal Tribunal which met on March 16, 1972, and affirmed the certifying officer's decision on March 22, 1972. The plaintiff then took a timely appeal to the Commissioner of the D.E.S. to reopen the Appeal Tribunal decision. This request was granted in part and denied in part on April 7, 1972. The same Appeal Tribunal which heard plaintiff's case originally reheard his case and again denied him benefits in a decision dated June 8, 1972. The plaintiff then appealed to the Commissioner of the D.E.S. to reopen this decision, and this request was denied on July 11, 1972.

The Appeal Tribunal is composed of a part time employer representative, a part time labor representative, and a full time Appeal Tribunal Chairman employed by the D.E.S. who presides over the hearings. The Appeal Tribunal Chairman, George Moulis, selects the employer and labor representatives of the Tribunal from a panel and "directs their attention to pertinent provisions of the law." (Pl. Ex. 5).

Chairman Moulis testified that as a standard procedure he receives the administrative file prior to the hearing, reviews the file, and determines what issue(s) to raise at the hearing. Chairman Moulis has the power to issue subpoenas to compel the attendance of witnesses (Pl. Ex. 5), and he did call a witness to testify at the second Appeal Tribunal hearing. Moulis "questions contending parties and witnesses" (Pl. Ex. 5), presents evidence, rules on all objections, and, in general, presides over the hearing.

D.E.S. Regulation No. 16(e), promulgated under the authority of NH RSA 282, confers upon the Appeal Tribunal Chairman the duty to consider "any issue relevant to the claim." In the two Appeal Tribunal hearings, the Chairman raised issues which, although relevant to the claim, ranged beyond the findings and rulings contained in the certifying officer's decision.

## I. PRETERMINATION HEARING

The instant case involves a termination of unemployment compensation benefits, without a prior hearing, following a determination that the claimant "refused to apply for suitable work" and "placed limitations on . . . [his] availability which remove . . . [him] from the normal labor market." (Pl. Ex. 1). The plaintiff contends that the termination of his unemployment compensation benefits without a prior hearing violates both the Due Process Clause of the Fourteenth Amendment and the statutory command of 42 U.S.C. § 503(a)(1).

A. Plaintiff's constitutional challenge is based on the assertion that a procedure by which those who have been initially determined to be eligible for unemployment compensation benefits are deprived of such benefits pending a hearing on an adverse redetermination violates the Due Process Clause of the Fourteenth Amendment as mandated by Goldberg v. Kelly, 397 U.S. 254, 90 S.Ct. 1011, 25 L.Ed.2d 287 (1970).

The defendant acknowledges that the requirements of procedural due process govern the payment of unemployment benefits. However, it advances the following arguments against relief which would require pretermination hearings: (1) the procedural safeguards afforded claimant, even before a due process hearing, were ample to protect claimant against arbitrary, unwarranted action; (2) the *Goldberg* rational should be confined to welfare and has no application to unemployment compensation programs; and (3) the public purse will be unduly jeopardized if the procedure urged by the plaintiff is adopted.

■ As Mr. Justice Blackmun has written recently, "But this Court now has rejected the concept that constitutional rights turn upon whether a governmental benefit is characterized as a 'right' or as a 'privilege.'" Graham v. Richardson, 403 U.S. 365, 374, 91 S.Ct. 1848, 1853, 29 L.Ed.2d 534 (1971). Whether any procedural protections are due depends upon whether the individual's interest in avoiding a deprivation of his property outweighs the governmental interest in summary adjudication. The considerations governing the assessment of plaintiff's claim have been repeatedly set forth by the Supreme Court:

> "Consideration of what procedures due process may require under any given set of circumstances must begin with a determination of the precise nature of the government function involved as well as the private interest that has been affected by government action." Goldberg v. Kelly, 397 U.S. 254, 263, 90 S.Ct. 1011, 1018, 25 L. Ed.2d 287 (1970) quoting Cafeteria & Restaurant Workers Union v. McElroy, 367 U.S. 886, 895, 81 S.Ct. 1743, 6 L.Ed.2d 1230 (1961).

It has also been stated that the constitutional right to procedural due process entitles one to a quality of hearing at least minimally proportioned to the gravity of what one otherwise stands to lose through administrative fiat. Van Alstyne, The Demise of The Right-Privi-

lege Distinction in Constitutional Law, 81 Harv.L.Rev. 1439, 1452 (1968).

█ It cannot be doubted that the plaintiff has suffered a substantial loss of income or may even have been totally deprived of support because of the D.E.S.'s procedures followed in this case. Pregent was found initially eligible for benefits, had begun receiving said benefits, but then had them terminated without a prior fair hearing. Though the findings and subsequent determinations that claimant "refused to apply for suitable work" and was "unavailable" for work are pre-eminently factual, they were made without the claimant being given advance notice that the issue of his entitlement to unemployment compensation benefits had been raised, or the right to confront and cross-examine those persons whose testimony might prove decisive as to the factual determinations involved. It is this termination of benefits, which is a matter of statutory entitlement to persons qualified to receive them [9] and which involves state action that adjudicates important rights, without a prior "due process 'fair hearing' " that plaintiff alleges is contrary to the holding of *Goldberg, supra.*

We find the present case indistinguishable from Goldberg v. Kelly, *supra.*[10] See also Wheeler v. Montgomery, 397 U.S. 280, 90 S.Ct. 1026, 25 L.Ed.2d 307 (1970). *Goldberg, supra,* challenged the right of a state to terminate welfare benefits without a prior evidentiary hearing at which the recipient is given the chance to confront adverse witnesses and present his own evidence, verbal or written. The Supreme Court, balancing the state's interest in protecting public funds against the interest of the welfare recipient in having the necessities of life while the bureaucracy mulls over his eligibility, found the fiscal argument not persuasive, and rejected it.

█ The defendants contend that the procedural safeguards afforded claimants in unemployment cases, even before a hearing, are ample to protect them against arbitrary, unwarranted action. Claimants participate in an application interview, weekly benefit rights interviews, periodic reinterviews, and, as needed, claims adjustment interviews. Information which the D.E.S. receives is investigated and is brought to the claimant's attention at these interviews. In the case at bar the plaintiff was interviewed with regard to his refusal to apply for the night watchman's job at Davis and Symonds Lumber Company. Defendant argues that this interview which took place at the counter of the D.E.S. office in Claremont amounted to a prior fair hearing and that the claim-

9. An entitlement to unemployment insurance benefits or welfare payments is no different from a due process standpoint than the right to a pension, or a farm subsidy, or a professional license to practice. Much of the existing wealth in this country takes the form of government largesse that does not fall within traditional common-law concepts of property. Therefore, once a person's qualification for the benefit is shown, it cannot be arbitrarily denied, or withdrawn, without due process standards being fulfilled. See Goldberg v. Kelly, *supra,* note 8 at 397 U.S. 262, 90 S.Ct. 1011; Van Alstyne, The Demise of The Right-Privilege Distinction in Constitutional Law, 81 Harv. L.Rev. 1439 (1968).

10. While we recognize a split of authority on this question, we find ourselves in agreement with Mr. Justice Douglas, concurring in California Human Resources Dept. v. Java, 402 U.S. 121, 135, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), Judge Oakes in Wheeler v. State of Vermont, 335 F.Supp. 856 (D.Vt.1971), Judge Lasker dissenting in Torres v. New York State Department of Labor, 321 F.Supp. 432, 438 (S.D.N.Y.1971), Judge Wollenberg in Crow v. California Department of Human Resources, 325 F.Supp. 1314 (N.D.Calif.1970), cert. den. 408 U.S. 924, 92 S.Ct. 2495, 33 L.Ed.2d 330 (1972), and the California District Court in Java v. California Department of Human Resources Dev., 317 F.Supp. 875, 878 (N.D.Calif.1970). But see Torres v. New York State Department of Labor, 321 F.Supp. 432 (S.D.N.Y.1971), vacated and remanded, 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971), 333 F.Supp. 341 (S.D.N.Y.1971), aff'd. 405 U.S. 949, 92 S.Ct. 1185, 31 L.Ed.2d 228 (1972).

ant could have requested that his attorney be present and could also have asked that witnesses be made available for his cross-examination. We rule that this "counter" conversation did not rise to the level of a prior fair hearing; claimant had no notice that he could have an attorney present and that his benefits were in jeopardy.

It is to be noted that Pregent's benefits were terminated by a certifying officer who personally gathered no facts relative to this job refusal prior to making his determination. The facts relative to claimant's refusal to work at Davis and Symonds Lumber Company were gathered by a D.E.S. interviewer who lacked the authority to make an eligibility determination. The certifying officer's decision to disqualify claimant from benefits was based on the interviewer's report. As Judge Oakes in Wheeler v. State of Vermont, 335 F. Supp. 856 (D.Vt.1971), stated:

> This separation of the fact-finding from the decision-making process was said to be "fatal to the constitutional adequacy" of the New York welfare procedures in Goldberg v. Kelly, *supra*. At page 860.

█ The defendant further argues that post termination administrative appeal *de novo* [11] and judicial review *de novo* [12] are available to aggrieved claimants, and any determination favorable to the claimant results in fully retroactive payments. These so-called procedural safeguards, however, do not correct the principal defect that exists within the present statutory scheme for the administration of unemployment compensation benefits in New Hampshire. As the Supreme Court in *Goldberg, supra,* stated:

> . . . [T]he crucial factor . . . is that termination of aid [benefits] pending resolution of a controversy

over eligibility may deprive an *eligible* recipient of the very means by which to live while he waits. 397 U.S. at page 264, 90 S.Ct. at page 1018.

It is clear that there are often cases in which, because of delay in the administrative process and personal lack of resources, those deprived of unemployment compensation benefits pending resolution of the eligibility controversy may be in dire financial straits. For this reason, the *Goldberg* rationale requiring a due process hearing *before* the termination of welfare benefits is equally applicable to the termination of unemployment compensation. It is immaterial to the resolution of this issue whether the post termination procedures fully comport with due process, for the post termination delay [13] prior to a due process hearing is fatal.

Defendant argues that the *Goldberg* rationale should be confined to welfare and has no application to unemployment compensation programs. Defendant further suggests that "brutal need" was the basis on which the Supreme Court rested its decision in *Goldberg, supra,* and that "need" is not a defining characteristic of plaintiff's case. We reject this contention.

The defendant relies heavily on the case of Torres v. New York State Department of Labor, 321 F.Supp. 432 (S.D.N.Y.1971), vacated and remanded 402 U.S. 968, 91 S.Ct. 1685, 29 L.Ed.2d 133 (1971), 333 F.Supp. 341 (S.D.N.Y.1971), aff'd. 405 U.S. 949, 92 S.Ct. 1185, 31 L. Ed.2d 228 (1972). This reliance is misplaced for two reasons. In the second *Torres* case which was affirmed by the United States Supreme Court there was a specific finding that the claimant had received a hearing prior to the suspension of benefits. No such finding can be made here. Furthermore, the *Torres* case was decided before Fuentes v. Shevin, 407 U.S. 67, 92 S.Ct. 1983, 32 L.Ed.

---

11. See NH RSA 282:5, subd. B(6) contained in the Appendix hereto.

12. See NH RSA 282:5, subd. G contained in the Appendix hereto.

13. In the case of the plaintiff, the delay was fifty-four days between the date that the eligibility redetermination was made and the date the Appeal Tribunal's decision was rendered.

2d 556 (1972). The Supreme Court in *Fuentes* stated:

Nevertheless, the District Courts rejected the appellants' constitutional claim on the ground that the goods seized from them—a stove [etc.]— were not deserving of due process protection, since they were not absolute necessities of life. The courts based this holding on a very narrow reading of Sniadach v. Family Finance Corp., 395 U.S. 337, 89 S.Ct. 1820, 23 L.Ed. 2d 349 (1969), and *Goldberg, supra,* . . . . They reasoned that *Sniadach* and *Goldberg,* as a matter of constitutional principle, established no more than that a prior hearing is required with respect to the deprivation of such basically "necessary" items as wages and welfare benefits.

This reading of *Sniadach* and *Goldberg* reflects the premise that those cases marked a radical departure from established principles of procedural due process. They did not. Both decisions were in the mainstream of past cases, having little to do with the absolute "necessities" of life but establishing that due process requires an opportunity for a hearing before a deprivation of property takes effect. [citing many cases] In none of those cases did the Court hold that this most basic due process requirement is limited to the protection of only a few types of property interests. While *Sniadach* and *Goldberg* emphasized the special importance of wage and welfare benefits, they did not convert that emphasis into a new and more limited constitutional doctrine. [Fn. omitted] [The Court then cited Bell v. Burson, 402 U.S. 535, 91 S.Ct. 1586, 29 L.Ed.2d 90 pointing out that a driver's license

is not a necessity, but still merited due process protection.] . . . But if the root principle of procedural due process is to be applied with objectivity, it cannot rest on such distinctions [as between types of property]. The Fourteenth Amendment speaks of "property" generally. At pages 88–90, 92 S.Ct. at pages 1998–1999.

■ Unemployment insurance, like public assistance, is administered by the individual states within a federal statutory framework. Both programs involve grants made to the states which have established programs of aid to unemployed and/or needy persons, certified by relevant officials as meeting the standards set by federal statutes and regulations. Both programs reflect a governmental policy to assist those who are financially insecure. Unemployment compensation benefits are a temporary measure, created by statute and designed to allow the claimant to maintain his standard of living during a hiatus between jobs. The fact that unemployment benefits are paid without reference to need,[14] i. e., without reference to a means test, does not mean that a claimant's plight is "qualitatively" different from that of a welfare recipient. As Judge Oakes in Wheeler v. State of Vermont, *supra,* so aptly said:

While such need may from time to time not be, in *Goldberg's* turn of phrase, "brutal," speaking quantitatively, it is nonetheless compelling in the constitutional sense; the payment of unemployment benefits to those entitled to them permits retention of the basic human dignity that past accomplishment alone merits, avoiding, in Macaulay's stark phrase, sinking, after many vicissitudes of fortune, into

14. Need is not relevant to a determination of eligibility for unemployment benefits. "Unemployment compensation is greatly preferable to relief because it is given without any means test." H.R. Rep. No. 615, 74th Cong., 1st Sess., 7 (1935). "Unemployment compensation differs from relief in that payments are made as a matter of right, not on a needs basis but only while the worker is involuntarily unemployed." S.Rep. No. 628, 74th Cong., 1st Sess., 11 (1935). The amount of weekly benefits depends strictly on the wages received during the base period and varies directly with the wages received.

"abject and hopeless poverty." Cf. Johnson v. Harder, 438 F.2d 7, 12 (2d Cir. 1971), referring to the "right to exist in society." 335 F. Supp. at pages 861–862.

A type of "need," however, is present in the statutory scheme for unemployment insurance to the extent that any "salary replacement" insurance fulfills a monetary need caused by lost employment. California Human Resources Dept. v. Java, *supra*, 402 U.S. 130, 91 S.Ct. 1347. The Supreme Court further indicated that unemployment compensation is in a sense a substitute for "welfare or private charity." California Human Resources Dept. v. Java, *supra*, 402 U.S. 131–132, 91 S.Ct. 1347. The fact that the unemployed person may not be as destitute as the recipient of public assistance does not thwart the *Goldberg* rationale.

The defendant urges that there are substantive differences between the administration of welfare payments and unemployment benefits that militate against any extension of the holding in *Goldberg, supra,* to encompass unemployment compensation benefits. A claimant for unemployment benefits must certify each week as to his eligibility for benefits for the past week; at that time his claim is evaluated and a determination for the past week is made. It is argued that this is in complete contrast to the welfare system where recipients, once found eligible, are presumed eligible.[15] The defendant contends that since eligibility is always in question in the case of an unemployment claimant, it would be administratively and fiscally burdensome to be required to hold a pretermination *Goldberg* hearing whenever a determination of ineligibility, be it for a day, a week, or longer, is made.

While we are mindful of the administrative differences between the welfare and unemployment compensation schemes, both involve an initial decision as to general eligibility, followed by periodic determinations that the applicant's circumstances have not changed in such a way as to affect that first decision. We are not persuaded that the administrative difficulties alluded to by the D.E.S. are such that the extension of the *Goldberg* principles to this situation would be either impractical or unduly burdensome.

Lastly, the defendant contends that there is a likelihood that greatly increased, nonrecoverable overpayments will be made out of public funds if pretermination hearings are required. Defendant argues that if pretermination hearings are made mandatory, it will encourage claimants to request hearings and then to delay their requests while they exhaust the benefits to which they are allegedly entitled. Summary adjudication, the argument goes, protects the public fisc by stopping payments promptly upon discovery of reason to believe that a recipient is no longer eligible.

In *Goldberg, supra,* the Supreme Court stated that these governmental interests are not overriding. The requirement of a prior due process hearing will doubtless involve some greater expense, and the benefits paid to some ineligible claimants pending decision at the hearing probably cannot be recouped. But as the court in Kelly v. Wyman, 294 F. Supp. 893, 901 (D.C.1968), cited in *Goldberg, supra,* 397 U.S. 261, 90 S.Ct. stated:

> Against the justified desire to protect public funds must be weighed the individual's overpowering need in this unique situation not to be wrongfully deprived of assistance. . . . While the problem of additional expense must be kept in mind, it does not justify denying a [prior] hearing meeting the ordinary standards of due process.

---

15. Although welfare recipients have a duty to report any changes in their circumstances, they have, with limited exceptions, no obligation to effect any change in their status.

There are ways by which the State can protect itself in order to minimize these increased costs. NH RSA 282:-14(E) allows the State to recover overpayments if the ineligible claimant is not judgment-proof. Hearings may be accelerated and additional personnel employed. The D.E.S.'s administrative skill in devising prompt procedures for hearing will largely determine the degree of impact on the public fisc.

B. Plaintiff also raises the issue of whether a pretermination due process hearing is statutorily required by section 303(a)(1) of the Social Security Act, as amended, 42 U.S.C. § 503(a)(1), which provides that state methods of administration be found "to be reasonably calculated to insure full payment of unemployment compensation when due."[16]

The Supreme Court in California Human Resources Dept. v. Java, 402 U.S. 121, 91 S.Ct. 1347, 28 L.Ed.2d 666 (1971), held that the California procedure providing for automatic termination of unemployment benefits, when an employer files an appeal, violated section 303(a)(1) of the Social Security Act, as amended, 42 U.S.C. § 503(a)(1), since it was not "reasonably calculated to insure full payment of unemployment compensation when due," as the statute requires.

In the instant case plaintiff was initially determined to be eligible for unemployment benefits but was subsequently deemed ineligible. Payment of benefits was terminated without a prior due process hearing on the basis of an eligibility redetermination made by a certifying officer.

In order to determine if this procedure violates the statutory command of 42 U.S.C. § 503(a)(1), it is necessary to examine the purpose of the federal statutory scheme. The objective of Congress was to provide a substitute for wages lost during a period of unemployment not the fault of the employee. As the Supreme Court in California Human Resources Dept. v. Java, *supra*, stated:

> Probably no program could be devised to make insurance payments available precisely on the nearest payday following the termination, but to the extent that this was administratively feasible this must be regarded as what Congress was trying to accomplish. 402 U.S. at 130, 91 S.Ct. at 1353.

The Supreme Court in California Human Resources Dept. v. Java, *supra*, concluded from the legislative history of the Act and the commentary upon it, that the word "due" means "the time when payments are first administratively allowed as a result of a hearing of which both parties [claimant and employer] have notice and are permitted to present their respective positions."

Even though defendant reviews on a weekly basis the eligibility of a claimant, we find that the concept of when benefits are "due" under section 303(a)(1) of the Social Security Act, 42 U.S.C. § 503(a)(1), does not change from week to week after a claimant has been found eligible and no prior due process hearing has been held with regard to a subsequent finding of ineligibility. Having been found initially eligible, plaintiff was entitled to benefits

---

**16.** Section 303(a)(1) of the Social Security Act, as amended, 42 U.S.C. § 503(a)(1), provides in part:

(a) The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provision for—

(1) Such methods of administration (including after January 1, 1940), methods relating to the establishment and maintenance of personnel standards on a merit basis, except that the Secretary of Labor shall exercise no authority with respect to the selection, tenure of office, and compensation of any individual employed in accordance with such methods) as are found by the Secretary of Labor to be *reasonably calculated to insure full payment of unemployment compensation when due.* [Emphasis added.]

until defendant afforded him a due process hearing. This requirement of a pretermination due process hearing is especially important because of the delay between the date that the eligibility redetermination is made and the date that the Appeal Tribunal's decision is rendered. In the case of the plaintiff, the delay was fifty-four days which is approximately equal to the administrative delay that existed in California Human Resources Dept. v. Java, *supra*, which was held statutorily defective, and is far in excess of the administrative delay that existed and was struck down in Wheeler v. State of Vermont, *supra*. We, therefore, find that plaintiff's benefits were "due" and could not be summarily terminated by a certifying officer's determination of ineligibility. To conclude otherwise would frustrate the purpose of early substitute compensation during unemployment under section 303(a)(1) of the Social Security Act. See California Human Resources Dept. v. Java, *supra*; Hiatt, et al v. Indiana Employment Security Division, et al, 347 F.Supp. 218 (N.D.Ind.1971), vacated and remanded sub nom Indiana Employment Security Division v. Burney, 409 U.S. 540, 93 S.Ct. 883, 35 L.Ed.2d 62 (1973); Wheeler v. State of Vermont, *supra*.

In sum, we hold that a hearing which complies with the minimum procedural due process requirements as set forth in Goldberg v. Kelly, *supra*, is both constitutionally and statutorily required before an individual who was initially determined to be eligible for unemployment compensation benefits can have his benefits subsequently terminated. If an adverse determination to the claimant is made at the pretermination hearing, then the claimant's benefits shall immediately cease. This holding is limited to those individuals who were initially found eligible for unemployment compensation benefits.

The *Goldberg* case sets forth the following minimum procedural due process requirements that are to apply at pretermination hearings:

(a) Such hearing need not take the form of a judicial or quasi-judicial trial, but the claimant must be provided with timely and adequate notice detailing the reasons for termination, and an effective opportunity to defend by confronting and cross-examining adverse witnesses and by presenting his own arguments and evidence orally before the decision-maker.

(b) Counsel need not be furnished at the pretermination hearing, but the claimant must be allowed to retain an attorney if he so desires.

(c) The decision-maker need not file a full opinion or make formal findings of fact or conclusions of law, but should state in writing the reasons for his determination and indicate the evidence he relied on.

(d) The decision-maker must be impartial, and he shall not have participated in the investigatory or fact finding stages of the case or in making the determination under review.

## II. TERMINATION PROCEDURES

The plaintiff contends that the D.E.S. denied him a fair and impartial hearing in violation of 42 U.S.C. § 503(a)(3) [17] and the Due Process Clause of the Fourteenth Amendment with regard to his contested claim for unemployment compensation benefits. He specifies three separate actions relative to the manner in which his unemployment benefits were terminated and relative to the post

---

17. Section 303(a) of the Social Security Act, 42 U.S.C. § 503(a), provides:

(a) The Secretary of Labor shall make no certification for payment to any State unless he finds that the law of such State, approved by the Secretary of Labor under the Federal Unemployment Tax Act, includes provisions for—

\* \* \* \* \*

(3) Opportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied;

. . . .

termination Appeal Tribunal proceedings which allegedly violated his constitutional and statutory rights.

## A. SUMMARY TERMINATION

First, the plaintiff challenges the manner in which his benefits were summarily terminated by a certifying officer of D.E.S. who gave him no notice that his benefits were in jeopardy, who gave him no *formal* opportunity to respond personally to any charges against him, and who performed no fact-finding in reaching his decision. This issue is moot in light of our ruling that a pre-termination hearing which comports with the minimal due process requirements as set forth in Goldberg v. Kelly, *supra*, is constitutionally required in instances where a claimant was initially found eligible to receive unemployment compensation benefits and has subsequently had his benefits terminated by reason of a finding and determination of ineligibility.

## B. NOTICE

 Second, the plaintiff argues that the two post termination Appeal Tribunal hearings which were held were constitutionally and statutorily [18] defective in that the Appeal Tribunal raised a variety of issues without giving notice to the claimant that such issues were in dispute and based their affirming decisions on such points which were not contained in the certifying officer's decision to terminate the payment of benefits to the claimant.

The certifying officer's decision put plaintiff on notice that the refusal to apply for the night watchman's job was the basis for two separate disqualifications, i. e., NH RSA 282:4, subd. M (refusal to apply for *suitable* work) and NH RSA 282:3, subd. C (not part of the *normal labor market*—"unavailable"). The first Appeal Tribunal decision contained among the findings the following paragraph:

The claimant also testified that in addition to working in industries, he has had experience in food service. However, his only efforts for work consisted of contacting industries. Furthermore, some of the industries that he has been contacting for work, have retirement policies and would not employ the claimant because of his age.[19]

The certifying officer's decision provided no notice that these facts would be in issue. Commissioner Adams subsequently granted a reopening of this Tribunal on the issue of availability because there was no evidence in the record to support the claim that any of the places where claimant had applied for work had retirement policies.[20] At the second Appeal Tribunal hearing it was unanimously found that claimant was unavailable for work because, among other reasons:

The claimant, who is sixty-seven years of age, was laid off from his last job on June 11, 1971, because his position was eliminated in a reorganization and he would not be considered for re-employment. Since his unemployment, the claimant only contacted eleven employers on his own for work. One of these contacts was the Community Action Association and another was the Senior Citizens Association.

---

18. See the text of 42 U.S.C. § 503 (a) (3) in footnote 17, *supra.*

19. This finding was contained in a unanimous decision of the Appeal Tribunal dated March 22, 1972, and was based on a hearing which was held on March 16, 1972.

20. "I am, however, directing the Tribunal to reopen Mr. Pregent's case and take evidence concerning Mr. Pregent's applications for work. As you point out,

no evidence was introduced before the Tribunal as to whether or not the employers that Mr. Pregent contacted had a retirement policy which would prohibit Mr. Pregent's employment. The further hearing before the Tribunal will be limited to the question of Mr. Pregent's attachment to the labor market and his search for work." Letter from Commissioner Adams to Attorney Berkson dated April 7, 1972, in evidence.

Testimony was also submitted that two of the employers that the claimant had contacted on his own for work had retirement policies.

The claimant's only search for work *since March 16, 1972* was to contact two employers that he was directed to by the local Employment Office. The claimant had not contacted any other employers for work on his own *since March 16, 1972.*[21] [Emphasis added.] The limited reopening of claimant's case provided no notice that he would have to justify the number or type of places where he had sought work, or what he had done since March 16, 1972.

The hearing procedure guidelines are set forth in NH RSA 282:5, subd. C(4) as follows:

*Procedure.* The hearings shall be conducted in such a manner as to ensure a fair and impartial hearing to the interested parties. The appeal tribunal shall hear the appeal *de novo* and shall not be bound by prior findings or determinations of the department of employment security, though the records of said department shall be part of the evidence to be considered by the tribunal. The manner in which appeals shall be filed and presented and the conduct of such proceedings shall be in accordance with regulations prescribed by the commissioner, and such regulations need not conform to common law or statutory rules of evidence and other technical rules of procedure. . . .

This statute is amplified by Commissioner's Regulation No. 16(e) which reads as follows:

To the extent possible the appeal shall set forth the grounds upon which it is claimed that the certifying officer's determination is incorrect; however, *any issue relevant to the claim shall be considered at the hearing,* except where the jurisdiction of the Appeal Tribunal is limited upon further

hearing when reopening is ordered by the commissioner. [Emphasis added.]

The right to timely and adequate notice has been cited as the fundamental element of due process in case after case. The purpose of timely and adequate notice is to allow a party to prepare a specific case to meet the specific charges leveled against him. In order for a hearing to be meaningful, a party must be given a reasonable opportunity to know the claims of the opposing party and to be prepared to counter them. As a Three-Judge Court in Caldwell v. Laupheimer, 311 F.Supp. 853 (E.D.Pa. 1969), stated:

. . . [P]rocedural fairness requires the incorporation of at least the minimal incidents of due process recognized by defendants. Thus, the notice must be both timely and adequate, given within a reasonable time prior to the taking of any action, and specifying the proposed action and the grounds therefor, indicating the information needed to determine eligibility, and advising the recipient of the right to be heard and to be represented by counsel. Moreover, *there must be full and complete disclosure of the information upon which the proposed action is based.* At page 856. [Emphasis added.]

We find that the plaintiff was not given adequate notice of the issues to be raised on appeal and that this amounted to a violation of his constitutional right to due process of law. To the extent that NH RSA 282:5, subd. C(4) and Commissioner's Regulation No. 16(e) promulgated pursuant thereto allow issues of which the claimant did not receive timely and adequate notice to be raised on appeal, we hold them unconstitutional. Timely and adequate notice of *all* issues, both factual and legal, that are to be raised at the pretermination hearing or at any subsequent Appeal Tribunal hearing must be given to the

---

21. This finding was contained in a unanimous decision of the Appeal Tribunal dated June 8, 1972, and was based on a hearing which was held on May 23, 1972.

claimant so that he can be prepared to meet them at the hearing.

While we are reluctant to rewrite legislation and thereby encroach upon matters properly within the legislative province, we see no necessity for an Appeal Tribunal, as presently constituted, to conduct post termination appeals *de novo* following the requirement of a due process pretermination hearing as outlined above. If, however, the D.E.S. decides to continue holding post termination hearings *de novo*, then timely and adequate notice of all issues to be raised must be given to the claimant. Post termination hearings as well as pretermination hearings must comport with due process, and this is true even though there is a right to appeal an adverse determination to the Superior Court *de novo*.[22] NH RSA 282:5, subd. G(3).

## C. IMPARTIAL DECISION–MAKER

▇▇▇ Third, the plaintiff contends that the role of the Chairman of the Appeal Tribunal is such that he not only presides over the hearing, but also vigorously prosecutes the D.E.S.'s case. Plaintiff argues that this necessarily precludes the Chairman from being fair and impartial, in violation of 42 U.S.C. § 503(a)(3)[23] and the Due Process Clause of the Fourteenth Amendment. We disagree.

While an "impartial decision maker is [an] essential" ingredient of due process, Goldberg v. Kelly, *supra*, 397 U.S. 271, 90 S.Ct. 1022, it does not necessarily follow that the Chairman of the Appeal Tribunal, who is a full time D.E.S. employee under the State merit system, cannot render a fair and impartial decision. The salary of the Chairman is not based upon the number of decisions rendered by the Appeal Tribunal nor upon

any amount of benefits paid or not paid; rather, he receives a fixed annual salary which is paid out of funds provided to the defendant by the federal government for administration of the Social Security Act. Plaintiff's allegation that the Chairman of the Appeal Tribunal is responsible for presenting and prosecuting the D.E.S.'s case implies that the D.E.S. or its representatives have a personal interest in the outcome of any case before the Tribunal. We find this allegation to be without merit as the D.E.S. acts merely as a conduit for the payment of benefits from a fund consisting of contributions from the various employers within the state. The D.E.S. is not affected in any way by the decisions of the Appeal Tribunal to pay or not to pay benefits. Furthermore, the Commissioner of D.E.S. has no appeal rights and cannot legally contest the decisions of the Appeal Tribunal. NH RSA 282:5, subd. B(1)(c).

There has been no showing that the Chairman of the Appeal Tribunal was involved in the investigatory or fact-finding aspects of claimant's case or the initial decision to terminate the payment of benefits; rather, these functions were performed respectively by the interviewer, Mr. Blair, and by the certifying officer, Mr. Williams. See Kelly v. Wyman, 294 F.Supp. 893, 907 (S.D.N.Y. 1968). The Chairman's initial contact with claimant's case occurred when he reviewed the administrative file prior to the Appeal Tribunal hearing. If the Chairman of the Appeal Tribunal did have prior involvement with a claimant's case, either in the investigatory, fact-finding, or decision-making state, we would regard such prior official contact as disqualifying and as violative of due process.[24]

22. A claimant must exhaust administrative remedies before filing an appeal in the Superior Court. The delay between the filing of an initial administrative appeal and a Superior Court decision is conservatively estimated at six months (see footnote 33 of plaintiff's brief) and

makes it impossible to effectively cure any prior due process defects.

23. See footnote 17, *supra*.

24. E. g., if the certifying officer who made the initial decision to terminate claimant's unemployment benefits sat on the

The fact that the Chairman has the power to issue subpoenas to compel the attendance of witnesses, question parties and witnesses, rule on all objections, and, in general, preside over the hearing does not preclude him from being impartial. Most administrative hearings which are designed to elicit facts are conducted in this manner, and there is no evidence from which to conclude that, because the Chairman presides over and conducts the administrative hearing, he is predisposed to support the decisions of the D.E.S. or the Commissioner.

## III. VAGUENESS ANALYSIS

Plaintiff contends that NH RSA 282:3, subd. C,[25] which defines "availability," is void for vagueness, both facially and as applied, and thereby violates the Due Process Clause of the Fourteenth Amendment. More specifically, the plaintiff argues that the statutory requirement that a claimant must have "exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work" provides an inadequate standard to inform the claimant of what he must do to maintain his eligibility for unemployment compensation benefits and to guide the D.E.S. in making determinations relative to a claimant's "availability" or lack thereof.

Vagueness analysis has some relevance wherever due process is required, and there can be no doubt that the requirements of due process govern the payment of unemployment benefits. It by no means follows, however, that the same precision of language is necessary in evaluating eligibility criteria for unemployment compensation benefits as is necessary in statutes defining criminal conduct or regulating areas falling within specific constitutional guarantees, e. g., the First Amendment. See Henkes v. Fisher, 314 F.Supp. 101 (D.Mass. 1970), aff'd. 400 U.S. 985, 91 S.Ct. 462, 27 L.Ed.2d 436 (1971).

Vagueness is a matter of degree and, accordingly, one must look to the legislative history behind the statute in question as well as to the case law interpreting the statute. In 1947, NH RSA 218:3, subd. C (revised and now known as NH RSA 282:3, subd. C) read as follows:

C. He is able to work, and is available for work. Provided, however, that in the case of a pregnant woman she shall be deemed unavailable for work for a period not to exceed sixteen weeks beginning eight weeks prior to the expected date of childbirth as certified by a legally licensed physician, and further provided that such period of unavailability shall be sooner terminated if subsequent to childbirth she earns in any one week wages in employment equal to or in excess of three dollars more than her weekly benefit amount.

The present revised statute, NH RSA 282:3, subd. C, reads as follows:

C. He is ready, willing and able to accept and perform suitable work on

---

Appeal Tribunal, we would regard this as a clear violation of due process. In addition, the same individuals who either made the initial decision to terminate benefits or conducted a review thereof should not be permitted to sit in judgment of their own determination. For administrative review to be meaningful, each review officer must not have had any prior official involvement with the case before him. See Gibson v. Berryhill, 93 S.Ct. 1689, 36 L.Ed.2d 488 (decided May 7, 1973).

25. 282:3 *Benefit Eligibility Conditions*. An unemployed individual shall be eligible to receive benefits with respect to any week only if the commissioner finds that:

C. He is ready, willing and able to accept and perform suitable work on all the shifts, except that women shall not be disqualified for refusing to accept work during the hours of the so-called third shift, and during all the hours for which there is a market for the services he offers and that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work.

all the shifts, except that women shall not be disqualified for refusing to accept work during the hours of the so-called third shift, and during all the hours for which there is a market for the services he offers and that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work. (Effective Aug. 27, 1965).

The revisions in the 1947 law evolved as a result of several New Hampshire Supreme Court opinions.

In Hallahan v. Riley, 94 N.H. 48, 45 A.2d 886 (1947), the court discussed "suitable work" and set forth the following qualifying standards:

. . . [W]hile a woman [or a man] may be justified in refusing as unsuitable, work offered to her immediately after her separation from her job, the situation may change after the lapse of a considerable time during which she has remained unemployed. Work which was unsuitable at the beginning of her unemployment may become suitable when consideration is given to the length of unemployment and the prospects of securing her accustomed work. Although the applicant may continue to refuse jobs paying a lower rate of compensation, she must do so at her own expense rather than at the expense of the unemployment fund. At page 51, 45 A.2d at page 888.

In Roukey v. Riley, 96 N.H. 351, 77 A.2d 30 (1950), the Court concerned itself with claimant's attachment to the labor market as it related to his availability or unavailability for work and stated:

In other words, is his availability so limited that in fact he is no longer available for work, or is there in the locality a market for his services during the hours that he offers them? If there is such a market he should be regarded as available for work. If there is no such market then he has so limited his availability that he is not genuinely attached to a labor market and is no longer, in fact, available for work in that locality. At page 353, 77 A.2d at page 32. [Citations omitted.]

Lastly, in Goings v. Riley, 98 N.H. 93, 95 A.2d 137 (1953), the Court discussed the availability requirement of the statute and stated:

The availability requirement of the statute does not demand of the claimant total availability for any work offered. Where the claimant is ready to accept suitable work which he does not have good cause to refuse, he is considered attached to the labor market and available. . . . Where the claimant attaches such restrictions on the time or type of work he will accept that there is no market for his services as offered, he is not considered available. At page 94, 95 A.2d at page 139. [Citations omitted.]

The Court then went on to discuss the situation where claimant has limited "availability" for shift employment.

■ The purpose of the "availability" requirement is "to test the claimant's attachment to the labor market. It is to determine if he [claimant] is unemployed because of lack of suitable job opportunities or for some other reason such as physical incapacity or unwillingness to work." Roukey v. Riley, supra, 96 N.H. 352, 77 A.2d 31.

■ We conclude that the standards set forth in NH RSA 282:3, subd. C and especially the language contained therein "that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work" are not so vague and indefinite that they inject into the system of the administration of unemployment compensation benefits "so much free play that candidates *may be* arbitrarily excluded" from receipt of benefits. Henkes v. Fisher, *supra*, 314 F.Supp. at page 104. The "economic conditions" in any given locale are matters peculiarly within the knowledge and expertise of the D.E.S. and are not readily capable of

## 800

more definite articulation. The standard of a "reasonably prudent man seeking work," borrowed undoubtedly from the common-law of torts, is not so vague and imprecise as to provide no guidance to a claimant who desires to maintain his eligibility. Words are to be accorded their usual meaning, and, therefore, a claimant is to seek employment as a reasonable man of ordinary prudence desiring work in light of the prevailing economic conditions in the immediate geographic area. Such a flexible standard fully comports with the public policy underlying unemployment compensation, i. e., that unemployment benefits are a temporary measure designed to allow an individual to maintain his standard of living between jobs. We rule that NH RSA 282:3, subd. C is not void for vagueness and that there has been no denial of due process of law by the application of this statute to the claimant. In making this determination, we do not reach the issue of whether the facts in the instant case warranted a finding of "unavailability," as this issue is properly one for the state courts. See NH RSA 282:5, subd. G(3).

## IV. ORDER

We declare that the provisions of NH RSA 282, insofar as they permit the termination of unemployment compensation benefits without a prior fair hearing to individuals initially found eligible to receive said benefits, are unconstitutional and, accordingly, decree that its continued enforcement is enjoined from this date on. The minimum due process requirements for a fair hearing are set forth on pages 20–21 herein.

Since plaintiff was not given a pretermination hearing before his benefits were terminated, and since the post termination Appeal Tribunal hearings raised issues of which the plaintiff had no notice, we rule that the claimant was effectively denied due process of law. It is, therefore, ordered that a due process pretermination hearing in accordance with the requirements set forth on pages 794–795 of this opinion be held within thirty days hereof to consider the issues of claimant's alleged refusal to apply for suitable work and his alleged "unavailability." If no such pretermination hearing is held within thirty days, then the plaintiff shall be paid all the unemployment compensation benefits due and accrued. If, after such a pretermination hearing, the determination is adverse to the claimant, no benefits shall be paid.

So ordered.

## APPENDIX

NH RSA 282:3, subd. C

*Benefit Eligibility Conditions.* An unemployed individual shall be eligible to receive benefits with respect to any. week only if the commissioner finds that:

\*　　\*　　\*　　\*　　\*　　\*　.

C. He is ready, willing and able to accept and perform suitable work on all the shifts, except that women shall not be disqualified for refusing to accept work during the hours of the so-called third shift, and during all the hours for which there is a market for the services he offers and that he has exposed himself to employment to the extent commensurate with the economic conditions and the efforts of a reasonably prudent man seeking work.

\*　　\*　　\*

NH RSA 282:4, subd. M

*Disqualifications for Benefits.* An individual shall be disqualified for benefits:

\*　　\*　　\*　　\*　　\*　　\*

M. If the commissioner finds that he has failed, without good cause, either to apply for available, suitable work when so directed by the employment office or the commissioner or to accept suitable work when offered him, or to return to his customary self-employment (if any) when so directed by the commissioner. Such disqualification shall continue for the week in which such failure occurred and for the three weeks which immediately follow such week.

(1) The commissioner, in determining whether or not any work is suitable for an individual, shall consider the following:

(a) The degree of risk involved to his health, safety and morals, and

(b) His physical fitness; and

(c) His prior training; and

(d) His experience; and

(e) His prospects for securing, in his labor market area, work in his customary occupation; and

(f) The distance of the available work from his residence, but such distance shall not be substantially greater than that distance to all those places to which others living in the same town or city travel for work which utilizes similar or related skills or services, and also to where he acquired his currently available annual earnings; and

(g) His prior earnings and length of unemployment, but his prior earnings shall be given more weight than his length of unemployment.

(2) Notwithstanding any other provisions of this chapter, no work shall be deemed suitable and benefits shall not be denied under this chapter to any otherwise eligible individual for refusing to accept new work under any of the following conditions:

\* \* \* \* \* \*

(b) If the wages, hours or other conditions of the work are substantially less favorable to the individual than those prevailing for similar work in the locality;

\* \* \*

NH RSA 282:5 *Claims for Benefits.*

A. *Filing.* Claims for benefits shall be made in accordance with such regulations as the commissioner of the department of employment security may prescribe.

B. *Determination Procedure.* (1) *Definitions:*

(a) *Certifying Officer.* Certifying officer shall mean the commissioner or his representative authorized to make determinations on claims.

\* \* \* \* \* \*

(c) *Interested Party.* Interested party shall be the claimant, his last employing unit or employer, any employer whose account was or may be charged with benefits paid and any employing unit or employer whenever the claimant's reason for leaving their employ may be material to his claim.

(2) *Determination.* A determination shall be a decision by the certifying officer on a claim and shall be made, except as otherwise specifically provided in this chapter, as follows:

\* \* \* \* \* \*

(c) A determination on an initial claim for total or partial benefits for any week except as in (a) and (b) above shall include: the maximum duration thereof, whether or not, with the reasons therefor, the claimant is payable for such week and for consecutive weeks thereafter for which claims are filed (no other fact appearing to the contrary during such period), and identification of the employer whose account will be charged with benefits to be paid by reason of such determination. This determination shall in every case be mailed to all interested parties except the claimant where the determination is that he is payable.

(d) A determination shall be made by a certifying officer on any claim for benefits, though not an initial claim, where, in his judgment, there appears an issue relative to the entitlement of the claimant to benefits. The determination shall be in manner provided in (c) immediately above and the interested parties shall be notified in the same manner.

\* \* \* \* \* \*

(4) A certifying officer may, within six months of any determination, for good cause reconsider his determination or any part thereof, provided there was no appeal taken from the determination. Such redetermination shall be made, and an appeal therefrom may be had, in the same manner as the original determination.

(5) Any claim or question involved therein may be referred by the certifying officer to an appeal tribunal, and such appeal tribunal shall make its decision with respect thereto in accordance with the procedure described in subsection C of this section.

(6) Any interested party may appeal from a certifying officer's determination by filing an appeal to an appeal tribunal within seven calendar days after the determination was mailed to his last known address. Provided, that if the commissioner finds sufficient grounds to justify or excuse a delay in filing an appeal, the time for filing said appeal may be extended by him.

(7) If no appeal from a determination by a certifying officer is taken within the time limits in (6) above such determination shall thereupon become final and benefits shall be paid or denied in accordance therewith, subject to the provision in (6) above relative to good cause for late filing of the appeal; provided, however, that the certifying officer's determination shall continue to have effect as though no appeal had been filed with respect to all weeks of unemployment and any amount not affected by the appeal.

\* \* \*

(9) It shall be a condition precedent to the cessation of payment of benefits to any individual that he be given an opportunity to appear in person at a designated office in accordance with the commissioner's regulation to be heard relative to his continued entitlement to benefits. His failure to appear within the designated period shall be deemed a waiver of such right and he shall be bound by the determination unless he appeals as provided in (6) above.

(10) Benefits found payable by any administrative determination or decision, or court decision, order or decree, shall be immediately paid in accordance therewith up to the week in which a subsequent appellate body renders a decision, order or decree finding that ben-

efits were not and/or are not payable. If the final decision, order or decree so decides an issue that the claimant would not have received the benefits paid him by a prior decision, such amount shall be deemed overpaid. The commissioner shall recover such amount by civil action in any manner provided for the collection of contributions in section 12 of this chapter, and shall withhold, in whole or in part as determined by the commissioner, any future benefits payable to the individual, and credit such amount against the overpayment until it is repaid in full.

C. *Appeals Tribunals*. (1) *Composition and Jurisdiction*. Appeal from a certifying officer's determination and a decision made pursuant to section 14–D shall be to an impartial tribunal appointed by the commissioner. Each such tribunal shall be known as an appeal tribunal, and shall consist of three members, one of whom shall be a representative of employees, one of whom shall be a representative of employers and the other shall be an employee of the department of employment security and shall serve as chairman, or shall consist of only the chairman. No person shall participate as a member of an appeal tribunal in any case in which he is an interested party or is the employee of an interested party. The chairman shall not be disqualified in appeals concerning individuals claiming benefits by reason of state or federal employment.

\* \* \* \* \* \*

(4) *Procedure*. The hearings shall be conducted in such a manner as to ensure a fair and impartial hearing to the interested parties. The appeal tribunal shall hear the appeal *de novo* and shall not be bound by prior findings or determinations of the department of employment security, though the records of said department shall be part of the evidence to be considered by the tribunal. The manner in which appeals shall be filed and presented and the conduct of such proceedings shall be in accordance with regulations prescribed by the com-

missioner, and such regulations need not conform to common law or statutory rules of evidence and other technical rules of procedure. The place and time of hearings shall be determined by the commissioner. In no case shall a hearing proceed unless the chairman is present.

(5) *Records*. A full and complete record shall be kept of all proceedings in connection with an appeal, and all testimony at any hearing shall be recorded verbatim.

(6) *Decisions*. In every appeal, except as is provided in paragraph (3) above, the chairman shall prepare a written decision which shall be sent by registered mail to each interested party at the last address of each according to the records of the department of employment security. The decision, among other necessary things as determined by the commissioner, shall: set forth all the material findings necessary to support the conclusions; identify the interested parties and the account, whether fund or employer, to which benefits will be charged, if allowed; identify the week or period during which benefits are denied, if denied; identify the first week and subsequent period with respect to which benefits will be paid, if allowed; determine all things necessary to finally dispose of the case; identify the members of the tribunal. The decision of an appeal tribunal shall be deemed to be the decision of the commissioner of the department of employment security for all subsequent actions in connection therewith. The decision shall become final upon the expiration of the tenth day following the date on which the decision is mailed.

D. *Appearance and Postponement*. Where the commissioner, in his sole judgment, finds sufficient grounds to justify or excuse an interested party from appearing or requesting a postponement, in order to protect the rights of the interested parties he shall direct the appeal tribunal to hold a further hearing, and such further hearing shall be *de novo* notwithstanding that a decision may have become final.

E. *Reopening of Appeal Tribunal Decision*. (1) *Procedure*. The commissioner may, upon written request of an interested party or upon his own initiative, in any case in which a decision has been rendered reopen the case on the basis of fraud, mistake, or newly discovered evidence. Such request shall set forth the facts or argument considered to be the basis for the reopening. No reopening will be considered by the commissioner unless the request is received in his office within ninety days immediately following the date of mailing of the appeal tribunal's decision. The commissioner shall promptly notify in writing other interested parties of the request for reopening.

(2) *Commissioner's Determination*. The commissioner shall render his determination within a reasonable period after all the facts or arguments are made available to him. The determination of the commissioner shall be sent by registered mail to each interested party at the last address of each according to the records of the department of employment security. The same appeal tribunal which rendered the original decision shall upon direction to reopen proceed in the same manner as though an appeal in said case were being taken from a determination of a certifying officer; provided, however, that the further hearing shall be limited to the introduction of evidence or argument relative to and concerning the factors which constitute the basis or grounds for the reopening.

\* \* \* \* \* \*

G. *Appeals to Court*. (1) Any interested party aggrieved by any decision of an appeal tribunal in proceedings under this chapter may, within ten days after the date of mailing of such decision, appeal therefrom to the superior court in

the manner provided in paragraph (3) of this subsection.

(2) Any interested party aggrieved by any decision of an appeal tribunal in proceedings under this chapter, who within ten days after the date of mailing of such decision requests the commissioner to direct the appeal tribunal to reopen the case and hold a further hearing to reconsider the case on the grounds of fraud, mistake, or newly discovered evidence (as required in subsection E of this section), may within ten days after the date of mailing of the decision of the commissioner which finally refuses the request for reopening of the case, appeal therefrom to the superior court in the manner provided in paragraph (3) of this subsection.

(3) Appeal to superior court in (1) and (2) above shall be to the superior court for the county in which is located the employment bureau or branch in which the original claim was filed. The appeal shall be perfected by filing a petition with the clerk of said superior court within the time limits specified in (1) and (2) above, and such petition must set forth specifically the grounds upon which it is claimed that the decision is in error, and no bond shall be required as a condition of entering such appeal. Thereupon the clerk of said superior court shall issue a citation to all interested parties, including in every case the commissioner, returnable at any time within ten days after the date of issue. The commissioner shall file with said clerk before trial a certified copy of the record on the claim which shall, upon being so filed, become part of the record of the case and part of the evidence in the case to be considered by the court. The superior court shall hear the case *de novo*. An appeal may be taken from the decision of the superior court to the supreme court in the same manner as is provided in civil actions. Upon the final determination of such judicial proceeding, the commissioner shall enter an order in accordance with such determination.

(4) Any interested party aggrieved by any decision of an appeal tribunal in proceedings under this chapter, who fails within the ten-day period after the date of mailing of such decision, for whatever reason, either to request the commissioner to direct a reopening for the purpose of reconsidering the case on the grounds of fraud, mistake, or newly discovered evidence, or to appeal to superior court under paragraph (1) above, but who at some subsequent time within the ninety days allowed in subsection E of this section requests the commissioner to direct such reopening, may, within ten days after the date of mailing of the decision of the commissioner which finally refuses the request for reopening of the case, appeal therefrom to the superior court for the county in which is located the employment bureau or branch in which the original claim was filed. Judicial review by said superior court under this paragraph shall be confined to whether or not the commissioner's decision was the result of arbitrary, unreasonable or capricious action, or contrary to law. The appeal under this paragraph shall be perfected by filing a petition with the clerk of said superior court within the time limit above specified, and the petition must set forth specifically the grounds on which it is alleged that the action of the commissioner was arbitrary, unreasonable or capricious, or contrary to law, and no bond shall be required as a condition of entering such appeal. Thereupon the clerk of said superior court shall issue a citation to all interested parties, returnable at any time within ten days after the date of issue. The commissioner shall file with said clerk before trial or hearing a certified copy of the entire record on the claim which shall, upon being so filed, become the record of the case. An appeal may be taken from the decision of the superior court to the supreme court in the same manner as is provided in

civil actions. Upon the final determination of such judicial proceeding, the commissioner shall enter an order in accordance with such determination.

(5) Any interested party aggrieved by any decision in proceedings under section 14–D of this chapter may appeal to superior court in the manner provided in section 5–G(3) of this chapter.

(6) A petition of appeal shall not act as a supersedeas or stay unless the commissioner shall so order.

(7) The commissioner may of his own motion transfer to the supreme court any question of law arising in administration of this chapter.

NH RSA 282:14 *Penalties.*

\* \* \* \* \* \*

E. [*Overpayments.*] Any person who has received any benefits under this chapter while any conditions for the receipt of benefits imposed by this chapter were not fulfilled or while he was disqualified from receiving benefits, shall, unless such benefits were received by him solely through error or inadvertence of the commissioner or his authorized representative as defined by the regulations of the commissioner, be liable to repay to the commissioner such benefits and they shall be considered to be overpayments. No such overpayment shall exist unless a determination has been made by a certifying officer setting forth the facts causing the creation of the overpayment and notice of such determination has been sent to the claimant who may appeal in the manner set forth in section 5 of this chapter. Such determination shall be made within two years of the weeks affected thereby.

The commissioner shall collect any overpayment created under this chapter by civil action in any manner provided for the collection of contributions in section 12 of this chapter, and shall withhold, in whole or in part as determined by the commissioner, any future benefits payable to the individual, and credit such amount withheld against the overpayment until it is repaid in full.