Carmen CAMACHO and Steven Flowers, individually and on behalf of all others similarly situated, Plaintiffs,

v.

William M. BOWLING, Director, Illinois Department of Labor; C. Thompson Ross, Administrator of Bureau of Unemployment Security; Agaliece Miller, Commissioner of Division of Unemployment Insurance; Sachtleben, Chief of the Appeals Section; Illinois Department of Labor, Defendants.

No. 78 C 770.

United States District Court, N.D. Illinois, E.D.

Feb. 8, 1983.

Alan Gilbert, Legal Assistance Foundation, Joanne Kinoy, Northwest Legal Services, Stephen Lythcott, Lawndale Legal Services, Helen Cropper, Legal Assistant Foundation, Chicago, Ill., for plaintiffs.

Moshe Jacobius, Asst. Atty. Gen., Chicago, Ill., for defendants.

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

ROSZKOWSKI, District Judge.

Before the court is a civil rights class action which challenges the practices of the State of Illinois in its administration of unemployment insurance benefits. The plaintiffs claim that the Illinois Department of Labor has a practice of raising issues at the administrative appeals hearing which were not appealed from and for which claimants received no notice. The plaintiffs contend that this practice violates Section 303(a)(3) of the Social Security Act, 42 U.S.C. § 503(a)(3), and deprives the plaintiffs of property (unemployment benefits) without the due process of law guaranteed under the Fourteenth Amendment to the Constitution of the United States. A bench trial of the liability issue [1] was conducted on

---

1. By order of the court, the trial was bifurcated. The hearing before the court addressed only the liability issue.

May 4, 1982. For the reasons stated herein, the court finds in favor of the plaintiff class.[2]

Jurisdiction of the court is properly invoked pursuant to 28 U.S.C. § 1343. This opinion constitutes the court's findings of fact and conclusions of law as is required by Federal Rule of Civil Procedure 52.

## I. THE UNEMPLOYMENT INSURANCE PROGRAM

Title III of the Social Security Act, 42 U.S.C. §§ 501 *et seq.*, established the Unemployment Compensation program. The program is administered and implemented through state governmental bodies. The Illinois program operates under the guidelines found in the Illinois Unemployment Insurance Act, Ill.Rev.Stat. ch. 48 §§ 300 *et seq.*, (1981). Under the Act, the Director of the Illinois Department of Labor is responsible for administering the Illinois Unemployment Insurance System. The procedures generally followed in administering the program are as follows.

### a. *Initial Application for Benefits*

Under the system as it is presently structured, applicants for unemployment insurance benefits must appear personally at the local unemployment office to apply for benefits. At the time of this initial application, each claimant completes an application form and then receives a benefits right interview.

During the interview, a state employee will explain the eligibility requirements to the claimant. Among the requirements discussed is the requirement that the claimant be able to work, be available for work, and be actively seeking work.[3] This require-

ment is generally referred to as the "A & A" requirement.

At the interview, which is conducted either one-on-one or in groups with the aid of audio visual equipment, the claimants also receive a booklet entitled "You and the Facts About Unemployment Insurance." The booklet, 32 pages in length, makes these disclosures about the A & A requirement:

> You are eligible for benefits for any week only if you meet ALL of the following conditions and are NOT subject to disqualification:
>
> * * * * * *
>
> During the week, you were ABLE to work, AVAILABLE for work and actively LOOKING for work on a full-time basis.
>
> * * * * * *
>
> The law states that you must be AVAILABLE FOR WORK during any week for which you claim benefits. This means, during the week, you must have been willing and ready to accept a suitable job....
>
> * * * * * *
>
> The law states you must be actively looking for work on your own initiative. While the State Job Service (at one of whose offices you must register) will make every effort to help you find a job, you will be expected to inform your unemployment insurance office about:
>
> 1. Where you applied for work.
> 2. The kind of work you have been seeking.
> 3. Your prospects of being hired.
>
> Keep a record of the dates and places you apply for work. If your period of unem-

---

**2.** The plaintiff class consists of all claimants for unemployment benefits in the State of Illinois who are, were, or will be parties to appeals from claims adjudicators' determinations in which the issue or issues in the written claims adjudicator's determination adverse to the appellant are other than whether the claimant is, was, or will be able to work, available for work and actively seeking work, and who, upon appeal, are, have been, or will be required to establish that they are, were, or will be able to work, available for work, and/or actively seek-

ing work and thereby have been or will be denied benefits for not establishing the same.

 The class action was certified pursuant to Federal Rule of Civil Procedure 23(b)(2).

**3.** Section 500(c) of the Illinois Employment Security Act, Ill.Rev.Stat. ch. 48 § 420 (1981), requires that an applicant be "able to work, and ... available for work; provided that during the period in question [he or she] was actively seeking work."

ployment becomes extended, you may have to consider "lowering your sights" to improve your chances of finding work.

The booklet also informs the claimant of other relevant rules including potential grounds for disqualification, procedures for appeal of adverse rulings, and amount of benefits to which a person may be entitled.

After the claimant completes the application, the agency hands the claimant a "Ben–437 form." The form, entitled "IMPORTANT NOTICE," again reiterates the significance of the A & A requirement. The form, in full, provides:

> You have just filed your claim for unemployment insurance benefits. IN ORDER TO RECEIVE BENEFITS YOU MUST BE ACTIVELY LOOKING FOR WORK. The Employment Service, with whom you are required to register unless otherwise notified, will make every effort to help you find a job. However, you must also look for a job yourself. Upon request, you will be expected to furnish this office with information regarding (1) where you have applied for work, (2) the kind of work you have been seeking, and (3) your prospects for employment.
> IT IS ADVISABLE TO KEEP A RECORD OF THE DATES AND PLACES YOU APPLY FOR WORK.
> As the period of your unemployment becomes extended, you will be expected to give consideration to the acceptance of work outside of your customary occupation or for prevailing wages which may be lower than you received in your last regular job.
>
> * * * * * *
>
> Other conditions which you must meet to receive benefits are explained in a booklet, YOU AND THE FACTS ABOUT UNEMPLOYMENT INSURANCE. If you do not have a copy ask for one at the claims counter or the reception desk.

Unless the claimant is exempt, the Local Office will instruct the claimant to register with the Illinois Job Service. Registration with the local employment service office is also a prerequisite to eligibility for benefits.

After the interview, the claimant is mailed form "BIS 653". (*See* Appendix 1) [4]. The form covers a two week period. In completing the form, the claimant certifies that he was available and looking for work. The form asks the claimant to list in detail the potential employers contacted, the date of contact, the person contacted, the method of contact, the type of work sought, and the results of the contact. After the local office mails the BIS 653 to the claimant, it begins to process the claimant's application.

#### b. Processing the Application

The local office will review the completed application to determine whether the claimant is eligible for benefits. If this preliminary examination indicates eligibility, the local office mails a notice of the claim to the claimant's former employer. The employer is entitled to object to the claim if it believes the applicant is ineligible. If there is an employer objection, the claimant will be summoned back to the local office and the objection will be discussed with a claim's adjudicator.

If there is no objection, the claimant is authorized to receive up to 26 weeks of unemployment compensation provided that the claimant continues to satisfy all eligibility requirements.

#### c. Monitoring For Continued Eligibility

The local office also monitors eligible claimants to be sure that they continue to satisfy all requirements. This continuing review is achieved primarily through the BIS 653 form. Every two weeks, the claimant files a new BIS 653 that certifies continuing eligibility and documents in detail the claimant's availability for work and efforts to find work during the two week period covered by the form.

If local office personnel question the accuracy or sufficiency of the information on

---

**4.** The BIS 653 Form in Appendix I was the form in effect during 1977. It has since been revised twice, in 1979 and 1982. The revised form elicits the same kind of information as does the 1977 form.

the form, the office instructs the claimant to report to the office for an interview with a claims adjudicator. The office may also, in some circumstances, schedule periodic interviews with a particular claimant.

At the follow up interviews, the claims adjudicator will insure that the office's files are current and that the information contained therein is accurate. The claims adjudicator will also inquire into the claimant's continuing satisfaction of the A & A requirement.

The claims adjudicator will then decide whether the claimant is still eligible for benefits. The decision is rendered in writing, setting forth the basis of the decision. The written determination also informs the party of the right to appeal the decision to a referee. Either the claimant or an employer is entitled to appeal an adverse ruling.

A party also has a right to request the claims adjudicator to reconsider his decision before the claimant brings the appeal. Where reconsideration is requested, the claims adjudicator again gives written reasons for his ruling. Either the claimant or an employer may appeal an adverse reconsideration ruling.

#### d. The Appeal Hearing

An adverse ruling by the claims adjudicator at any stage of the application process may be appealed.

The appeals process begins with notice to the claimant of the right to appeal. The claims adjudicator's written determination contains standardized language which informs the party that they "may file an appeal, in person or by mail." The time limits for filing an appeal are stated. The written determination also informs the party that he will have the opportunity to present evidence at the appeal.

The claimant is also instructed to report to the local office on the claimant's regular report day and to continue to file the biweekly BIS 653 forms during the pendency of the appeal.

After the local office receives the notice of appeal, it sets a hearing date and notifies the claimant of the date by mail.

At the appeal the referee will conduct a hearing which first addresses the claims adjudicator's reasons for denying the benefits. The reason or reasons for the denial may or may not include the A & A issue. Where A & A is noted as an issue on appeal, the referee will address it first. If it is not an issue on appeal, the agency's internal procedural manual advises the referee to first address the written reasons for the denial. If those reasons are found to be meritless, the manual instructs the referee to then inquire into the A & A issue. The net effect is that any claimant wishing to establish eligibility through an appeal will have to overcome the A & A issue whether or not it was specifically noted as a basis for denial of benefit in the adjudicator's written decision.

The BIS 653 forms, which the claimant has been filing every two weeks to document his A & A are not physically before the referee at the appeals hearing. Nor are the forms available for the claimant to review at or prior to the hearing. The agency does have a policy, however, of granting continuances of appeals if the claimant needs to gather evidence of availability for work. The continuance must be requested, however, and the agency does not have an established policy of informing all claimants as a matter of course that they have the option of a continuance should they find that they are without necessary documentation.

The court finds, as a factual matter, that the failure to notify claimants that the A & A issue may be raised on appeal has the effect of placing some claimants before the referee unprepared to address the issue. This fact is well illustrated by the experience of two of the named plaintiffs in the action, Steven Flowers and Carmen Camacho.

## II. EXPERIENCES OF NAMED PLAINTIFFS WITH THE UNEMPLOYMENT INSURANCE PROGRAM

#### a. Steven Flowers

On or about June 6, 1979, Steven Flowers filed a claim for Illinois unemployment in-

surance benefits and was found to be monetarily eligible to receive benefits.

At the time of his application, Mr. Flowers received a booklet entitled, "You and the Facts about Unemployment Insurance" (BEN 224). Mr. Flowers read the booklet and generally understood it. Mr. Flowers was told by the claims adjudicator that he had to be looking for work and able to work and that he would be ineligible for benefits if he was not looking for work and was not able to work. He was also told that he had to register with the Illinois Job Service and would be ineligible for benefits if he did not register with the Illinois Job Service.

At the initial hearing, however, the claims adjudicator decided that Mr. Flowers had voluntarily left his employment and therefore was ineligible for benefits. The adjudicator's written determination provided:

> On 9–30–78, the claimant voluntarily left Southern Illinois University. Although he left for medical reasons he did not inform his employer of his illness, therefore he voluntarily left work without good cause. The claimant is ineligible for benefits from 6–3–79 thru 7–28–79 or until he is no longer unemployed.

No other reason was given for the disqualification.

The written determination also informed Mr. Flowers of his right to appeal. The standardized language at the bottom of the form provided:

> APPEAL RIGHTS: IF YOU DISAGREE WITH THIS DETERMINATION, you may file an appeal, in person or by mail. Your appeal must be FILED in this office within nine (9) days after the date of this notice if it was mailed to you, or within seven (7) days after the date of this notice if it was given to you. Any appeal submitted by mail must bear a postmark date within the applicable time limit for filing. If the last day for filing your appeal is a Saturday or Sunday, or any other day the office is closed, the appeal may be filed on the next day the office is open.
> DO NOT WAIT FOR YOUR REGULAR REPORT DAY.

If you file an appeal, a hearing will be held before a referee who will give you an opportunity to present evidence. You will be notified in advance of the time and location of the hearing.

If you file an appeal, continue to report to your unemployment insurance office on your regular report day as long as you remain unemployed or until you are otherwise instructed.

IF YOU DO NOT FULLY UNDERSTAND WHY YOU HAVE BEEN DENIED BENEFITS FOR ANY PERIOD, OBTAIN AN EXPLANATION AT THE UNEMPLOYMENT INSURANCE OFFICE WHERE YOU FILE YOUR CLAIMS.

Mr. Flowers filed a timely appeal from the claim adjudicator's determination and contested the finding of voluntary leaving. While awaiting his appeal, Mr. Flowers completed and mailed to the local office, every two weeks, BIS 653 forms certifying his compliance with A & A requirements. At no time was the information Mr. Flowers reported on the BIS 653 forms questioned by agency personnel prior to the appeal.

A "Notice of Hearing" was mailed to Mr. Flowers. Pursuant to said notice, Steven Flowers appeared before the referee on August 16, 1979.

The referee first inquired into the circumstances surrounding Mr. Flowers' departure from his employment. Testimony established that Steven Flowers was injured in an automobile accident and his doctor had instructed him not to return to work. Satisfied that Mr. Flowers' departure from his job was not voluntary and was with good cause, the referee then turned his attention to the A & A issue as the State's procedural manual instructs.

The referee questioned Mr. Flowers' about his efforts to seek new employment after his doctor had approved his return to work.

Referee: Okay did you make any personal contacts uh with potential employers

Mr. Flowers: Yes I have

Referee: Okay have you got a list of the ones you went to

Mr. Flowers: Uh I had uh, I put them on my certifications forms uh each two weeks that I had to fill out certification forms I listed 4 employers for employers that I had went to see

Referee: Four employers per two weeks

Mr. Flowers: ' Right every two weeks

Referee: Okay can you tell me where you went looking (inaudible)

Mr. Flowers: Yes uh First National Bank

Referee: When did you go to First National

Mr. Flowers: Uh I don't remember exactly. I know it's on the certification forms

Referee: Unfortunately we very rarely see them. They're at the local offices. So I

Mr. Flowers: They never asked me anything about uh whether or not I had went to see employers or not because every two weeks I had uh different four employers that I had went to see you know asking about jobs

Referee: M-hm

Mr. Flowers: And uh I went on an interview yesterday which was at the Anti-Cruelty Society, 27 W. Grand and uh I went to Illinois Bell, Harris Bank uh Jewel Food Store, Dominicks, I went to Agar Meat uh on 27th. See I went to everywhere I go when I go out I always ask the manager or someone in the store uh where ever I go you know whether or not they have anything available.

Referee: And you were released by your doctor for work on uh October of 78 right

Mr. Flowers: Yes he told me I was ready to go back to work

Referee: Okay did he put any restrictions on you

Mr. Flowers: No

Mr. Flowers also testified that he limited his search for work to those jobs which would pay at least $3.50 an hour.

On August 16, 1977, the Referee found that Mr. Flowers was ineligible for benefits. The Referee set aside the claim adjudicator's determination that Mr. Flowers left work without good cause. The Referee found that Mr. Flowers "has convincingly established with sufficient credible evidence that his reason for leaving work . . . (was) medical restrictions on his employment." The Referee nevertheless denied Mr. Flowers' claim to benefits because he had not satisfied the A & A requirements. The referee found that:

> The claimant left work voluntarily with good cause. The claimant has convincingly established with sufficient credible evidence that his reason for leaving work that is, because of medical restrictions on his employment.

> The claimant has not satisfied the requirements of Section 5000 of the Illinois Unemployment Insurance Act. He has not conducted a work search calculated to return him to the labor force in view of his extended period of unemployment and he has unduly restricted his availability for work since he requires a higher wage to accept work than he was earning in his previous job.

#### b. Carmen Camacho

On May 29, 1977, Carmen Camacho filed her initial application for unemployment insurance benefits and was found to be monetarily eligible to receive benefits.

After the eligibility determination, Ms. Camacho's employer objected to the payment of benefits and contended Ms. Camacho had been fired for misconduct. The local office then asked Ms. Camacho to return to the local office for an interview with a claims adjudicator to determine the reasons for her termination.

The claim adjudicator decided after conducting the interview, that Ms. Camacho had been fired for misconduct and he imposed the then required statutory six-week disqualification upon her. The adjudicator's written determination provided:

> On 5/26/77 the claimant was discharged from Acco Int., because she used abusive

language toward her supervisor, a violation of a company rule. Since the claimant acted in violation of the rules and in a way which was injurious to the employer's interest, she was discharged for misconduct connected with her work.

The claimant is ineligible for benefits from 5/29/77 through 7/9/77 or until she is no longer unemployed.

No other reason was given for the disqualification.

The written determination also informed Ms. Camacho of her right to appeal. The standardized notice of appeal language used was identical to that found in Mr. Flowers' written determination.

Ms. Camacho filed a timely appeal [5] from the claims adjudicator's determination and contested the finding of misconduct. While awaiting her appeal, Ms. Camacho completed and mailed to the local office, every two weeks, BIS 653 forms certifying her compliance with A & A requirements. At no time was the information Ms. Camacho reported on the BIS 653 forms questioned by agency personnel prior to the appeal.

On July 26, 1977, a "Notice of Hearing" was mailed to Ms. Camacho. One continuance of the hearing date was granted. On September 12, 1977, Ms. Camacho appeared before the referee.

The referee first considered whether misconduct was the reason for Ms. Camacho's discharge. The foreperson who supervised Ms. Camacho testified Ms. Camacho's production output had slowed and that this was the primary reason for the termination. Satisfied that productivity, not misconduct, caused Ms. Camacho's discharge, the referee then turned his attention to the A & A issue as the state's procedural manual instructs.

The referee questioned Ms. Camacho about her efforts to seek new employment during the period of May 29, 1977 through June 18, 1977. Ms. Camacho recalled the names of four businesses she had sought employment with, but the referee's ques-

tioning revealed that Ms. Camacho had contacted these businesses after the relevant period. When the referee asked for the names of other businesses, Ms. Camacho responded that she had looked at another factory, but could not remember the name. The referee twice more asked Ms. Camacho to identify any prospective employer she contacted between May 29, 1977 and June 18, 1977. She could not.

The referee also asked Ms. Camacho whether she had registered with the Illinois State Employment Service as is required. Ms. Camacho answered "No."

On November 2, 1977, the referee ruled that Ms. Camacho was ineligible for benefits. In his written conclusions, the referee reversed the claim adjudicator's finding of misconduct. The benefits were nevertheless denied because "[t]he claimant failed to establish a reasonable compliance with the active search for work provision of Section 500C of the Act during the (relevant) period."

### III. THE CLASS CLAIMS

The plaintiff class asserts two claims. First, the plaintiffs contend that the appeals procedure fails to give adequate notice that A & A issues may be considered by the referee in violation of procedural due process and Section 303(a) of the Social Security Act. Second, the plaintiffs contend that the appeals procedure violates equal protection because it has the effect of penalizing appealing claimants by requiring them to twice prove their A & A—once before the claim's adjudicator and then again before the appeal referee. Plaintiffs contend that non-appealing claimants are subjected to this burden of proof only once.

### IV. NOTICE ISSUES

*a. Due Process and the Social Security Act*

■ The Fourteenth Amendment to the United States Constitution guarantees that

---

**5.** Ms. Camacho had sought before filing an appeal, a reconsideration of the claim adjudica-

tor's ruling. The reconsideration was denied.

no State shall "deprive any person of life, liberty, or property without due process of · law."[6] The cornerstones of due process, in its procedural sense, are notice and opportunity for fair hearing. *Boddie v. Connecticut,* 401 U.S. 371, 91 S.Ct. 780, 786, 28 L.Ed.2d 113 (1971); *Smith v. Dallas County Bd. of Educ.,* 480 F.Supp. 1324 (E.D.Ala. 1979).

■ Section 303(a)(3) of the Social Security Act affords an identical protection, requiring "[o]pportunity for a fair hearing, before an impartial tribunal, for all individuals whose claims for unemployment compensation are denied." 42 U.S.C. § 503(a)(3). Whether the statutory "fair hearing" requirement has been met is tested by the same standards as constitutional procedural due process. *Ross v. Horn,* 598 F.2d 1312, 1318 n. 4 (3d Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980). *Cf. Wilkinson v. Abrams,* 627 F.2d 650, 664 (3d Cir.1980); *Carmona v. Sheffield,* 475 F.2d 738, 739 (9th Cir.1973). Thus, if the court finds that the appeals process violates procedural due process, it follows that the appeals process also violates Section 303(a)(3).

■ The due process requirement of notice, in the administrative context, "requires that interested parties be given a reasonable opportunity to know the claims of adverse parties and an opportunity to meet them. *North Alabama Express, Inc. v. United States,* 585 F.2d 783, 786 (5th Cir.1978), citing *FCC v. Pottsville Broadcasting Co.,* 309 U.S. 134, 143, 60 S.Ct. 437, 442, 84 L.Ed. 656 (1940); *Morgan v. United States,* 304 U.S. 1, 18, 58 S.Ct. 773, 776, 82 L.Ed. 1129 (1938); *Intercontinental Industries, Inc. v. American Stock Exchange,* 452 F.2d 935, 941 (5th Cir.1971), *cert. denied,* 409 U.S. 842, 93 S.Ct. 41, 34 L.Ed.2d 81 (1972). Adequate notice should "specify the nature of the facts and evidence on which the agency proposes to take action. Such

notice enables the affected party to prepare an informed response which places all the relevant data before the agency." *Hess & Clark, Division of Rhodia, Inc. v. Food and Drug Administration,* 495 F.2d 975, 983 (D.C.Cir.1974). *See also Ferguson v. Thomas,* 430 F.2d 852, 856 (5th Cir.1970) ("[in the context of teacher termination] minimum procedural due process requires that (a) he be advised of the cause or causes for his termination in sufficient detail to fairly enable him to show any error that may exist"); *Wolff v. McDonnell,* 418 U.S. 539, 564, 94 S.Ct. 2963, 2978, 41 L.Ed.2d 935 (1974) ("Part of the function of notice is to give the charged·party a chance to marshall the facts in his defense and to clarify what the charges are, in fact").

Two cases that stand for the proposition that a party must be notified in advance of the *precise issues* to be raised at a hearing are *In re Ruffalo,* 390 U.S. 544, 88 S.Ct. 1222, 20 L.Ed.2d 117 (1968) and *Navato v. Sletten,* 560 F.2d 340 (8th Cir.1977).

In *Ruffalo,* an attorney received notice of thirteen separate charges that would be raised in his disbarment proceedings. During the proceedings, the testimony suggested that a heretofore undetected ethical violation may have also been committed. The committee then proceeded to inquire into the newly discovered ground as well as the original thirteen. In its final order disbarring the attorney, the committee relied in part upon the new ground. The United States Supreme Court, upon review, held that the "absence of fair notice as to the reach of the grievance procedure and the *precise nature of the charges* deprived petitioner of procedural due process." 88 S.Ct. at 1226.

In *Navato,* a residency committee in a teaching hospital informed an intern that a disciplinary hearing would be held. The committee orally notified the intern that there had been numerous complaints about

---

**6.** It is now beyond question that the receipt of unemployment insurance benefits is a property right entitled to due process protection. *Ross v. Horn,* 598 F.2d 1312, 1317–18 (3d Cir.1979), *cert. denied,* 448 U.S. 906, 100 S.Ct. 3048, 65 L.Ed.2d 1136 (1980); *see Fusari v. Steinberg,* 419 U.S. 379, 388, 95 S.Ct. 533, 42 L.Ed.2d 521, *reh. denied* 420 U.S. 955, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975).

his performance, including lack of concern about patients, scheduling too many patients, poor record keeping and poor judgment. At the disciplinary hearing, however, the committee also inquired into other charges, including the intern's alleged fostering of discontent among other residents. The committee placed the intern on probation and also ruled that the intern would be required to repeat six months of training. The court, in evaluating the subsequently brought due process challenge, noted that "since the right to be heard is of little value unless one is informed as to the matter which is pending, procedural due process requires that some kind of prior notice be given." 560 F.2d at 340. The Eighth Circuit held that adequate notice was not given in the case.

> He was given no notice that the Committee would consider his alleged "incitement" of discontent with the program among fellow residents, his alleged failure to cooperate in the establishment of an on-call schedule at a local hospital in 1972, and his reported statement to secretarial staff that he wished to be terminated from the program to avoid payback provisions in his contract. Nor was he given any opportunity to respond to these allegations. Under these circumstances, we hold that he was not given the minimum procedural due process to which he was entitled.

560 F.2d at 346.

*Ruffalo* and *Navato* establish that adequate notice must identify the precise issues to be raised so that a specific, responsive, and complete defense may be presented. The court finds that such notice was not present in this case.

Under the appeals system as it is presently structured, the claimant is forced to confront issues that are not identified as issues for appeal. Ms. Camacho received notice that her alleged misconduct would be at issue; Mr. Flowers was told that his voluntary departure would have to be explained. As in *Ruffalo* and *Navato,* neither party was informed of the issue which would ultimately decide their claim. The inadequate

notice rendered the hearing on the A & A issue meaningless because neither party was prepared to address the issue.

The failure to inform is even more egregious in the setting of this case. Not only does the system fail to inform the claimant that the A & A issue will be raised, but to the contrary, it suggests to the claimant that the A & A issue has been favorably put to rest. Week after week the claimant files his BIS 653 form without objection by the government. This suggests to the claimant that the information he has provided satisfies the A & A requirements. Only after the hearing has begun and the claimant stands before the referee does he learn that the issue is still in dispute.

Worse yet, the claimant also learns that the BIS 653 forms which he has dutifully filed and which contain the specific information he needs to present his case is not before the referee and is not available at the hearing for his inspection.

This court acknowledges that the present case is different from *Ruffalo* and *Navato* in two arguably significant respects. Unlike the plaintiffs in *Ruffalo* and *Navato,* who received absolutely no notice of the issue ultimately dispositive, the plaintiffs herein received an early and repeated notice that A & A was a significant prerequisite to benefit eligibility. It is undisputed that the local office informs the claimant of the A & A requirement on at least two occasions during the initial application. It is also beyond question that the literature distributed to the claimant at the time of the application highlights the A & A requirement, thereby emphasizing its continuing importance. The evidence also established that claimants are advised to keep records of potential employers they have contacted so they can document their compliance with the A & A requirement. The defendants therefore argue that the claimants have a form of "constructive notice" that the A & A issue will be raised.

The present case may also be different from *Ruffalo* and *Navato* because defendants have a policy of permitting continuances of the appeals hearing upon request.

Thus, a claimant surprised by the A & A issue at the appeal can request a continuance.

The court believes, however, that these two differences are not significant and cannot provide a basis for distinguishing the present case from *Ruffalo* and *Navato.*

■ Addressing the continuance policy first, an unannounced policy of permitting continuances upon request does not cure the procedural unfairness inherent in the system. While the well-educated, the resourceful, or the represented[7] may inquire into the possibility of a continuance, the less resourceful claimants will not. The claimants are never informed of the option. Furthermore, the claimants cannot be held to have constructive knowledge of a policy which is unannounced and unpublished. The right to procedural due process is not reserved solely for those who possess the acumen to explore the possibility for continuance.[8]

A closer question is presented, however, by the office's policy of repeatedly informing the claimant that A & A is a significant issue. The original interview, the booklet "You and the Facts About Unemployment Insurance," and the bi-weekly filing of the BIS 653 form all serve to underscore the importance of the A & A requirement.

■ The court believes, however, that a general awareness of A & A's importance in the overall benefits scheme does not serve to notify the claimant that he or she should be prepared to prove their compliance with A & A at the specific appeals hearing. Not one of the various notices, pamphlets, interviews, or forms informs the claimant in a clear, straight-forward manner that A & A can be raised at the appeals hearing whether or not it is mentioned in the claim adjudicator's written determination.[9] The law requires specific notice of the precise issues to be determined at a particular hearing. The generalized notice defendants presently provide is simply inadequate.

Support for the conclusion that generalized notice is inadequate is found in two district court opinions. The first, *Pregent v. New Hampshire Dept. of Employment Security,* 361 F.Supp. 782 (1973), *vacated*[10] 417 U.S. 903, 94 S.Ct. 2595, 41 L.Ed.2d 207 (1974), involved facts virtually identical to the present case. In *Pregent,* the claimant sought unemployment benefits. Like the class members in the present case, the claimant was informed of the A & A requirement, both orally and in a pamphlet entitled "Rights and Obligations." After receiving benefits for a short period of time, the state certifying officer declared the plaintiff ineligible because he had turned down an offer of employment as a night watchman. The claimant refused the job because he alleged that it was dangerous. The certifying officer's written determination listed this specific job refusal as the only reason for denial of benefits. After receiving the written determination, the claimant brought his timely appeal before the State Appeal Tribunal. The Appeal Tribunal denied the claimant benefits on the new ground that he had failed to look

7. It appears that both Mr. Flowers and Ms. Camacho were represented by counsel. This underscores the fact that even those well acquainted with legal procedures may not think to ask for a continuance when the option is unannounced.

8. The court also suspects that in *Ruffalo* and *Navato* the plaintiffs also would have been able to obtain a continuance of the proceeding if only they had requested it. Yet those courts did not rely on the failure to request a continuance as a ground for rejecting the due process claim. This leads the court to believe that an unannounced continuance policy cannot be deemed to be a cure for unconstitutional procedural defects.

9. The court notes, in passing, that defendants present no basis for suggesting that the claimants should be held to have constructive notice that A & A could be raised at the appeals hearing. Defendants present no reported case law or published regulations which state that A & A will be raised at the appeals hearing. If such regulations existed, a constructive notice argument might be relevant.

10. The judgment was vacated and the case was remanded to consider whether changes in New Hampshire's procedures rendered the case moot.

for work other than industrial work. New Hampshire state law, like Illinois law, permitted the Appeal Tribunal to raise any relevant issue. Upon the claimant's request, the Appeal Tribunal reopened its inquiry, but again based ineligibility on a new ground, this time finding that the claimant had only contacted two potential employers. In holding that the practice violated federal statutory and constitutional law, the Court stated that "[t]he purpose of timely and adequate notice is to allow a party to prepare a *specific* case to meet the *specific* charges leveled against him." 361 F.Supp. at 796. The court held that "[t]imely and adequate notice of *all* issues, both factual and legal, that are to be raised at the pretermination hearing or at any subsequent Appeal Tribunal hearing must be given to the claimant so that he can be prepared to meet them at the hearing." 361 F.Supp. at 796–97 (Emphasis in text).

*Steinberg v. Fusari,* 364 F.Supp. 922 (D.Conn.1973) *vacated*[11] 419 U.S. 379, 95 S.Ct. 533, 42 L.Ed.2d 521 *reh. denied* 420 U.S. 955, 95 S.Ct. 1340, 43 L.Ed.2d 433 (1975), is also in point. In *Steinberg,* the Connecticut unemployment compensation benefits program provided that claimants were to report bi-weekly to the local office to pick up unemployment compensation checks. Upon reporting, the claimant filled out a form which certifies his continuing availability for work and his reasonable effort to find work. The claimant then entered a claims line and presented the completed form to the clerk. If the clerk raises no question, the claimant was routinely given his benefit checks for the two week period at issue. If the clerk raises an issue of possible disqualification, he sent the claimant to the "Fact Finding Examiner" for a seated interview. The examiner then proceeded to determine the claimant's eligibility. Of necessity, questions would often arise during the seated interview which involved third party information, for example, whether a certain employer was actually contacted. The examiner would attempt

to contact the third-party during the interview. If the third party could not be reached, the examiner might still proceed to make a determination on eligibility.

In striking the seated interview procedure, the court relied in part on the system's failure to provide adequate notice as procedural due process requires. The court stated "[c]laimants are provided with virtually no advance notice of the interview, or the precise issues involved, and consequently have no opportunity to either prepare their arguments or present witnesses on their behalf." *Id.* at 935. The Court concluded,

... whatever the minimal requirements of Fourteenth Amendment due process in this context, the "seated interview" system does not provide them. *At the very least, claimants are entitled to some advance notice of the hearing and precise issues to be considered,* with the concomitant opportunity to present evidence and bring counsel.

*Id.* at 936 (Emphasis supplied).

The *Pregent* and *Steinberg* holdings requiring specific and precise notice are supported by the United States Supreme Court's more general discussions of procedural due process.

In *Mathews v. Eldridge,* 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), the Court held that pretermination hearings were not required in social security disability proceedings. In the course of its analysis, the Court observed that "due process is flexible and calls for such procedural protections as the particular situation demands." 96 S.Ct. at 902. To help lower courts resolve due process questions raised in an administrative setting, the Court suggested that three factors be balanced.

... our prior decisions indicate that identification of the specific dictates of due process generally requires consideration of three distinct factors: *First,* the private interest that will be affected by the

11. The judgment was vacated and the case was remanded because "the State significantly revised its unemployment compensation scheme following the District Court's decision." 95 S.Ct. at 535.

official action; *second,* the risk of an erroneous deprivation of such interest through the procedures used, and the probable value, if any, of additional or substitute procedural safeguards; and *finally,* the Government's interest, including the function involved and the fiscal and administrative burdens that the additional or substitute procedural requirement would entail.

96 S.Ct. at 903 (Emphasis supplied). These three factors, applied to the present case, most persuasively suggest that the Illinois Unemployment Compensation appeals procedure violates procedural due process.

First, the private interest a claimant has in receiving unemployment benefits is great. When a claimant is unemployed, the source of steady income which supports family, health, and home has disappeared. Unemployment replaces, in some small way, that vital source of income. Its significance to the claimant cannot be overstated.

Second, the risk of erroneous deprivation is high. The court, admittedly, cannot accurately forecast the number of erroneous deprivations which actually do occur. The court can, however, confidently gauge the very serious risk of error in a system which places an unprepared, possibly uneducated, claimant before a referee who demands specific times and dates which relate to events the claimant is led to believe have been favorably put to rest. The cases of the named plaintiffs, Mr. Flowers and Ms. Camacho, are results of the unfairness and risk which inhere in the existing system.

The final factor to be considered is one which weighs most heavily in favor of the plaintiffs. That same factor also represents what is, in this court's opinion, the most inexcusable aspect of the existing appeals structure. The notice problem which paralyzes the claimants' effectiveness could be effectively remedied at virtually no cost to the government. Two sentences inserted into the claims adjudicator's standardized written determination would serve to inform the claimant that A & A could be raised at the referee's hearing. For example, this warning could be added to the standardized form:

> In addition to reviewing the claims adjudicator's written reasons for the denial of benefits, the referee may also inquire into your continuing compliance with the requirement that you be able to work, available for work, and actively seeking work. Please bring any records or lists of potential employers contacted during the relevant period so that you will be able to document your continuing compliance with this requirement.

Such a warning would adequately notify the claimant yet create absolutely no cost for the government.[12] The three factors in *Mathews v. Eldridge* therefore support plaintiffs' case and dictate that better and more adequate notice be given claimants in the appeals process.

#### b. Due Process and Constructive Notice

■ In addition to the constitutional shortcomings in defendants' constructive notice argument, the court believes that the doctrine of constructive notice actually works in favor of the plaintiffs. It surprises the court that, on the one hand, defendants contend that claimants should be held to have constructive notice that A & A may be raised at appeal even though not a single agency document informs the claimant of this fact. Yet, on the other hand, defendants choose to ignore that the appeals referee who is demanding specific information from claimants is an arm of the Illinois Department of Labor, an agency which has already received the precise information demanded in the claimants regularly filed BIS 653 forms. The court believes, that if constructive notice doctrine is applicable to this case at all, the doctrine dictates that the appeals referee should be held to have constructive notice of the information contained in the BIS 653 forms.

12. The court does not mean to suggest that the referee may not inquire into the accuracy or truthfulness of the information on the BIS 653 form. Such inquiry is entirely appropriate and necessary.

Other organizations, such as private corporations or partnerships, are held to have constructive notice of the collective knowledge of all the employees and departments within the organization. *See generally Matter of Pubs. Inc. of Champaign,* 618 F.2d 432 (7th Cir.1980); *U.S. v. T.I.M.E.– D.C., Inc.,* 381 F.Supp. 730 (W.D.Va.1974). Furthermore, a government agency, like the Department of Labor, is permitted in administrative proceedings to take judicial notice of information submitted to the agency when such notice suits the purposes of the agency. *See Market Street R. Co. v. Railroad Comm.,* 324 U.S. 548, 561–562, 65 S.Ct. 770, 89 L.Ed. 1171 (1945); *Wisconsin v. Federal Power Commission,* 201 F.2d 183, 186–87 (1952), *cert. denied,* 345 U.S. 934, 73 S.Ct. 795, 97 L.Ed. 1362 (1952); *P. Saldutti & Son, Inc. v. United States,* 210 F.Supp. 307, 313 (D.N.J.1962).

In at least one reported decision, the Seventh Circuit has ruled that one branch of a governmental agency will be held to have constructive knowledge of information received by another branch of that same agency. In *McPartlin v. Commissioner of the Internal Revenue Service,* 653 F.2d 1185 (7th Cir.1981), a civil division of the IRS was required to send certain notices to the taxpayers' last known address. The criminal division of the IRS, as well as the IRS' Kansas City Missouri Service Center, had been apprised that the taxpayers had recently moved. This knowledge, however, was never communicated to the agents assigned to investigate the taxpayers' possible civil tax liabilities. Consequently, notices eventually sent concerning civil tax deficiencies were sent to the wrong address. By the time the taxpayers learned of the civil deficiency, the time in which to file a petition for redetermination of the deficiency before the Tax Court had passed. The Seventh Circuit held that under the circumstances, the notice was not sent to the taxpayers' last known address and that the civil agents should have checked with the other branches. The Court noted that one of the considerations it relied upon in its decision was

that a taxpayer should not be expected to appreciate the separate responsibilities of the Commission's service centers and his offices located within the service centers. This is particularly true when the Commissioner has apparently not sought to inform taxpayers by way of numerous channels of communication at his disposal—*e.g.* tax forms and informational publications—that a change of address should be communicated by a taxpayer at a certain office of the Commission.

653 F.2d at 1190 n. 8.

It strikes this court as inherently unfair for the appeals referee to deny benefits because of a claimant's inability to recall specific dates and locations when that information is already within the agency. Like the taxpayers in *McPartlin,* the claimants cannot be expected to appreciate the different divisional responsibilities within the Department of Labor. Mr. Flowers' hearing, in particular, demonstrated that the claimants view the agency as a single entity. Mr. Flowers repeatedly stated that the information sought was in the BIS 653 form which the agency already had and he assumed that the referee also possessed that information. Again drawing upon *McPartlin,* the Department of Labor, like the IRS, has not used its "numerous channels of communication" (forms and interviews) to inform claimants that the BIS 653 forms will not be available at the appeal hearing. Under these circumstances, which are quite similar to *McPartlin,* the court believes that the referee should be held to have constructive notice of the information contained in the BIS 653 forms. The referee therefore will not be permitted to deny benefits because the claimant cannot remember specific job contacts if the requisite specificity is already provided in the BIS 653 form. On this second ground, the court also rests its decision.

For these reasons, the court finds that the appeals procedure violates Fourteenth Amendment procedural due process and Section 303(a) of the Social Security Act.

## V. EQUAL PROTECTION

Plaintiffs also contend that the present appeals structure unlawfully requires appealing claimants to twice prove their compliance with the A & A requirements. First, the appealing claimant must prove A & A compliance before the claims adjudicator; then the appealing claimant must prove A & A compliance a second time before the referee at the appeals hearing. In contrast, a non-appealing claimant must prove A & A compliance only once, i.e. before the claims adjudicator. Plaintiffs contend this unequal treatment of appealing claimants violates the equal protection guaranteed by the Fourteenth Amendment of the United States Constitution.

Equal protection, in a general sense, guarantees that similarly situated individuals will be dealt with in a similar manner by the government. *Louisiana ex rel. Francis v. Resweber,* 329 U.S. 459, 67 S.Ct. 374, 91 L.Ed. 422 *reh. denied* 330 U.S. 853, 67 S.Ct. 673, 91 L.Ed. 1295 (1947); *Louisville Gas & Electric Co. v. Coleman,* 277 U.S. 32, 48 S.Ct. 423, 72 L.Ed. 770 (1928); *Barbier v. Connolly,* 113 U.S. 27, 5 S.Ct. 357, 28 L.Ed. 923 (1885).

In the administrative context, equal protection has come to mean that unfair and inconsistent application of administrative requirements will not be tolerated. *See White v. Roughton,* 530 F.2d 750, 753–4 (7th Cir.1976); *Hornsby v. Allen,* 326 F.2d 605, 610 (5th Cir.1964). After a careful review of the appeals process, the court detects no equal protection violation.

To the extent that all claimants are considered to be similarly situated, the government may nevertheless draw distinctions which result in different treatment so long as the distinction has a reasonable basis or relationship to a legitimate governmental purpose. *Baxstrom v. Herold,* 383 U.S. 107, 86 S.Ct. 760, 15 L.Ed.2d 620 (1966); *Weber v. Aetna Casualty & Surety Co.,* 406 U.S. 164, 92 S.Ct. 1400, 31 L.Ed.2d 768 (1972); *United States v. Burnison,* 339 U.S. 87, 70 S.Ct. 503, 94 L.Ed. 675 (1950).

A reasonable basis exists for requiring appealing claimants to establish their A & A at the appeals hearing. At the initial hearing, the claims adjudicator is merely looking for some reason that would indicate ineligibility. Once an obvious bar to benefits is discovered, it makes little sense to require that adjudicator to determine whether all the other requirements have or have not been met. If the adjudicator were forced to consider each and every eligibility requirement, precious governmental resources would be wasted. For this reason, the administrative process accords a degree of finality only to those issues actually considered and decided by the claims adjudicator. If, on appeal, it becomes apparent that the adjudicator's decision on the eligibility requirement actually considered was for some reason incorrect, then the appeals referee is entitled to inquire into other eligibility requirements. In a sense, the other grounds are being fully inquired into for the first time at the *de novo* appeals hearing. Such a system has a reasonable basis in that it prevents waste of time and resources by reaching only those issues which need to be reached for a decision.

The court notes that plaintiffs are unable to present a single decision to directly support their equal protection theory. Those decisions upon which plaintiffs rely for reasoning by analogy are easily distinguished from the present case. The courts in *White v. Roughton,* 530 F.2d 750, 753–54 (7th Cir. 1976) and *Hornsby v. Allen,* 326 F.2d 605 (5th Cir.1964), criticized the administrative body's failure to develop written standards and rules for decision making. In those cases, the administrative bodies had engaged in ad hoc, subjective decision-making without written rules or guidelines. That certainly has not occurred here. In *Buckner v. Maher,* 424 F.Supp. 366, 374 (D.Conn. 1976) *aff'd sub nom. Maher v. Buckner,* 434 U.S. 898, 98 S.Ct. 290, 54 L.Ed.2d 184 (1977), the Court condemned the agency's demand that claimants provide information which was both irrelevant and impossible to prove. The A & A requirement in the present case, however, is relevant and can be proven with

information documenting the time and place of contacts with potential employers.

For these reasons the court finds that the present appeals system does not violate equal protection.

## VI. THE ESTOPPEL ISSUE

 Plaintiffs also argue that the claims adjudicator's favorable A & A determination should be deemed a final determination and that the referee should be estopped from reconsidering the question. They contend that the lack of finality in the administrative process subjects them to unlawful harassment by relitigation of issues which have been finally decided.

Estoppel requires satisfaction of four elements:

1. The issues sought to be precluded must be the same as that involved in the prior action;

2. The issue must have been actually litigated;

3. *It must have been determined by valid and final judgment;*

4. The determination must have been essential to the prior judgment.

*In re McMillan,* 579 F.2d 289, 291–92 (3d Cir.1978) (emphasis supplied). To the same effect, *see Butler v. Stover Bros. Trucking Co.,* 546 F.2d 544, 551 (7th Cir.1977); *Bickham v. Lashof,* 620 F.2d 1238, 1244 (7th Cir.1980); *Speaker Sortation Systems v. U.S. Postal Services,* 568 F.2d 46, 48 (7th Cir.1978).

 The short answer to plaintiffs' argument is provided in the finality element. The claims adjudicator's decision simply is not a final adjudication. The administrative process foresees an appeal to the referee for a *de novo* hearing. The referee is not bound by the determinations below. Application of estoppel under these circumstances is therefore inappropriate.

In accordance with this opinion, the court hereby enters judgment in favor of the plaintiff class on the liability issue. The relief which is appropriate under the circumstances will be considered in the second portion of this case.[13]

It is so ordered.

## APPENDIX I

### STATE OF ILLINOIS — DEPARTMENT OF LABOR
#### BUREAU OF EMPLOYMENT SECURITY
##### CLAIM CERTIFICATION

---

13. In the second half of the case, the court instructs the parties to indicate what relief they would deem to be appropriate, including the effect of the Eleventh Amendment. *See generally, Rothstein v. Wyman,* 467 F.2d 226 (2d Cir.1972), *cert. denied,* 411 U.S. 921, 93 S.Ct. 1552, 36 L.Ed.2d 315 (1973).

**1028**

D. Did you apply for or receive a retirement pension (other than Social Security) which was paid in full or in part by a former Employer? ☐ ☐

E. Did you receive a subsistence allowance from the Veterans Administration? ☐ ☐

F. Did you claim or receive Workmen's Compensation for temporary disability? ☐ ☐

G. Did you claim or receive unemployment insurance under any other state or federal law? ☐ ☐

H. Did you attend school or receive training in the above weeks? ☐ ☐

I. If you did any work during the calendar weeks listed, enter the information below.

Employer's name _____

Employer's address _____

Date(s) worked _____ Reason for Leaving _____

If you earned wages, enter gross amount in the proper column.

J. If you did or will receive holiday pay, enter gross amount in the proper column.

K. If you did or will receive vacation pay, enter gross amount in the proper column.

| WEEK 1 | WEEK 2 |
|---|---|
| | |
| | |

**FOR OFFICE USE ONLY**

L. If you were unable to work and/or unavailable for work, enter the total number of these days in the proper column.

IF YOU HAVE HAD A NAME OR ADDRESS CHANGE AND HAVE NOT REPORTED IT, SHOW IT BELOW:

NAME_____ STREET_____ TELEPHONE_____

CITY_____ STATE_____ COUNTY_____ ZIP CODE_____

THIS ADDRESS MUST BE VISIBLE THROUGH THE ENVELOPE WINDOW

Read Certification and sign below:

I register for work and make claim for benefits. I certify that my answers to the questions on this form are true and correct. I know that the law provides penalties of fines and imprisonment for false statements to obtain benefits.

DATE _____

**N O T E** After completing and signing this Certification, fold this form and insert it into the enclosed envelope with your Local Office address visible through the envelope window. Place a stamp on the envelope and mail it on, but not before the DATE TO MAIL shown above.

UI(IL) 8IS-0653

Claimant's signature (write your name, do not print)

STOCK NO 4356

## INSTRUCTIONS ONLY

The following instructions are intended as an aid in completing the questions on the reverse side.

**A & B.** No specific instructions

**C.** If you answered "yes" to this question, you must show the date you started to work and the Employer's name and address including zip code.

Example:

Date Started ___7-15-76___ Employer's Name ___XYZ Company___

Employer's Address ___35 McCord St., Chicago, Ill. 60660___

**D. thru H.** No specific instructions.

**1.** If you worked during the two calendar weeks covered by the form, show in the space provided the Employer's name, address including zip code, date(s) worked, reason for leaving and amount of money earned before deductions.

Example:

Employer's Name ___XYZ Company___

Employer's Address ___35 McCord St., Chicago, Ill. 60660___

Dates Worked ___7-15, 7-16___ Reason for Leaving ___Lack of Work___

| | WEEK 1 | WEEK 2 |
|---|---|---|
| | 7-10-76 | 7-17-76 |
| If you earned wages, enter the gross amount in the proper column | | $80|00 |

**J. & K.** If you earned holiday pay and/or vacation pay, show the amount of each before deductions. If you did not receive holiday pay or vacation pay, leave the space blank.

Example:

The calendar week ends Saturday, 7-10-76 and you will receive holiday pay of $40.00 for 7-4-76 on 7-15-76. The gross amount would be written in the space provided for the week ending 7-10-76.

| | WEEK 1 | WEEK 2 |
|---|---|---|
| | 7-10-76 | 7-17-76 |
| If you did or will receive holiday pay, enter gross amount in the proper column. | $40|00 | |

**L.** If you were unable to work and/or unavailable for work for any work day(s) during the two weeks covered by this Certification, enter the total number of these days in the proper column.

Example:

You were in the hospital for three work days the week ending 7-10-76 (unable to work) and visiting relatives in Arizona for four work days the week ending 7-17-76 (unavailable for work). You would show in the space provided:

| | WEEK 1 | WEEK 2 |
|---|---|---|
| | 7-10-76 | 7-17-16 |
| If you were unable and/or unavailable for work enter the total number of these days each week. | 3 | 4 |

**IMPORTANT**

1. Make sure you answer the questions completely and accurately. Failure to do so may result in a delay in your payments. If you do not understand the question or need additional information, please contact your Local Office either by telephone or in person as soon as possible.

2. Mail your Certification form on but not before the date to mail shown on the reverse side. If you are unable to mail your Certification on this date, mail it no later than the Saturday following that date. This applies even if you have returned to work.

3. If you worked during the two weeks shown on the Certification and then became unemployed for any reason other than lack of work, you must report to your Local Office immediately.

4. If you had a name, address or telephone number change and have not reported it, do so immediately. A space is provided on the front side of this form.

5. If you fail to receive another mail Certification form within three weeks from the date you mailed this Certification, contact your Local Office immediately.

6. If you have stopped filing for benefits and want to reopen your claim, report to your Local Office immediately.

7. Put your Social Security Number on any letters sent to your Local Office.

8. If you are eligible, you will receive benefits for the weeks claimed. If there is a question about your claim, you will receive a Claimant-Notification of Possible Ineligibility in the mail. This notice will indicate the questions involved and what action is required by you. If you disagree with the reasons given or if corrections or explanations are needed, contact your Local Office at once.