DECISION AND JUDGMENT ENTRY
{¶ 1} Appellant, James P. Sigler, pro se,[1] appeals the decision of the Lucas County Court of Common Pleas to dismiss his claims for lack of jurisdiction. For the following reasons, the dismissal is affirmed.
 {¶ 2} The record clearly reflects the following agreed-upon facts: Appellant had, for some time, received unemployment compensation benefits. After his benefits were terminated on May 3, 2002, appellant requested a redetermination. By mail on May 31, 2002, appellant was notified that the determination terminating his benefits was affirmed. On June 20, 2002, appellant filed an appeal of the redetermination. On July 5, 2002, appellant was notified that his appeal had been transferred to the Unemployment Compensation Review Commission ("UCRC"). On July 10, 2002, appellant filed a request for an in-person hearing. On July 17, 2002, appellant received notice that his appeal had been set for a telephonic hearing on July 31, 2002. On July 22, 2002, appellant wrote the UCRC requesting documents that he alleged were missing from his case file and necessary for his appeal. He also reiterated his request for an in-person hearing.
 {¶ 3} On July 31, 2002, UCRC mailed appellant a notice that his appeal had been dismissed for failure to appear at that day's telephonic hearing. He was advised of an opportunity to demonstrate good cause for failing to appear. On August 5, 2002, appellant wrote UCRC stating that he had failed to appear due to the agency's failure to provide requested documents and its failure to schedule an in-person hearing, rather than a telephonic one. In this writing, appellant also asserted that he had suffered hearing damage which would "place him at a disadvantage" at a telephonic hearing.[2]
 {¶ 4} On October 15, 2002, UCRC mailed appellant an "Order Denying Vacate of Dismissal of Appeal" in which it found that appellant's reasons did not constitute good cause for failing to appear at the telephonic hearing. On October 24, 2002, appellant timely requested an in-person hearing on the issue of good cause.
 {¶ 5} On October 31, 2002, appellant filed an "Appeal from Failure to Appear" in the Lucas County Court of Common Pleas, in which he acknowledged that on October 24, 2002, he had appealed the "good cause" issue to the Commission. He then stated, "Appellant assumes that the superior jurisdiction of this court would both supersede and interrupt the administrative process. Thereby staying the administrative hearing request and rendering same a nullity [sic]." Due to appellant's appeal to court, the UCRC did not render a final decision on appellant's October 24, 2002 appeal of his failure-to-appear determination.
 {¶ 6} After the parties briefed the sole issue of jurisdiction, the trial court held that appellant's failure to exhaust his available administrative remedies rendered the trial court without jurisdiction to review the appeal. From that order dismissing his appeal, appellant now raises the following assignments of error:
 {¶ 7} "1. The lower court explicably erred as matter of factual analysis [sic], by concluding that the nonlawyer pro se appellant sought total merit review or equitable relief, when all he sought or seeks, was and is, a true copy of the examiner's fact finding report, that the state agency has unconstitutionally withheld from him (and the court), in direct contravention of the Cottrell (federal) Injunctive Order and OAC4141.27.09(D).
 {¶ 8} "2. The lower court erred as a matter of preferential or slanted legal research (citations solely limited to state law), and thereby inappropriately applied ineffective state unemployment law to a continuing benefit situation that was clearly, distinctly, esoterically and unquestionably created by a secular Act of Congress, which resulted in Public law 107-147, which was in turn, exclusively governed by42 U.S.C. 501 et seq., which is the applicable superior federal statutory law, so specified therein.
 {¶ 9} "3. The lower court erred as a matter of selective positioning by failing to embrace legal intrepidity as demonstrated by its failure to exercise the concurrent jurisdiction and responsibility that it SHARES with the federal court system, and by further failing to apply the OVERRIDING, preemptive and well settled federal non-exhaustion ofremedies LEGAL DOCTRINE, to the REOCCURING constitutional challenge issue presented by this instant case." (Emphasis sic).
 {¶ 10} R.C. 4141.282 allows a claimant to appeal a "written notice of the final decision" to the court of common pleas. A court of common pleas, however, will not gain jurisdiction to hear an appeal unless a claimant first exhausts all administrative remedies. The doctrine of exhaustion of administrative remedies is well-established. Nemazee v. MtSinai Medical Center (1990), 56 Ohio St.3d 109, 111. Only after a claimant has exhausted administrative remedies does a court have appellate jurisdiction. "Jurisdiction to review administrative determinations is conferred upon the court of common pleas only after an interested party has exhausted available administrative remedies."Campbell v. Ohio Bureau of Employment Services (1991),74 Ohio App.3d 603, 605. Since we would be without jurisdiction to determine the other assignments of error, we will address the exhaustion issue first.
 {¶ 11} At least at one point, appellant notes he styled his appeal as a declaratory judgment action. Declaratory judgment actions may only interrupt an administrative appellate process when the constitutionality of a statute is at issue. "[N]o such exhaustion of administrative remedies is required if the administrative agency has no power to afford the relief sought. Exhaustion of administrative remedies is not required where the constitutionality of a statute is raised as a defense in a proceeding brought to enforce the statute." AEI Group, Inc. v. Ohio Dep'tof Commerce, Div. of Sec. (1990), 67 Ohio App.3d 546, 550 (internal citations omitted, emphasis added). This exception is qualified, however, by the discretion afforded trial courts in such matters. The granting of declaratory relief is a matter of judicial discretion and, absent an abuse of discretion by the trial court, an appellate court is not permitted to question the trial court's decision to deny or grant such relief. Bilyeu v. Motorists Mutual Ins. Co. (1973), 36 Ohio St.2d 35.
 {¶ 12} Appellant does not argue that the unemployment compensation statutes themselves are unconstitutional; he only argues that the UCRC's dismissals of his appeal deprived him of due process. Appellant additionally argues that the constitutional issues he raises precludes application of the exhaustion doctrine. In particular, he argues that his due process rights were violated when he was (allegedly) deprived on documentary evidence in contravention of O.A.C. 4141-27-09(D).[3]
 {¶ 13} From his arguments, appellant apparently takes issue with the entire Ohio unemployment compensation system, alleging that it does not comport with federal due process requirements. "[F]ederal law mandates that state unemployment programs provide an `[o]pportunity for a fair hearing, before an impartial tribunal * * *.' Section 503(a)(3), Title 42, U.S. Code. This statute has been interpreted to impose requirements which are the same as constitutional procedural due process requirements. Camacho v. Bowling (N.D. Ill. 1983), 562 F. Supp. 1012,1020. Hence, any judicial analysis of the state's hearing procedures in this case must be conducted with a fundamental recognition that under the Fourteenth Amendment, the cornerstone of due process, in the procedural sense, is the opportunity for a fair hearing. Boddie v. Connecticut
(1971), 401 U.S. 371, 378." Henize v. Giles (1986), 22 Ohio St.3d 213, 215.
 {¶ 14} The Ohio Supreme Court has already evaluated Ohio's unemployment compensation's statutory scheme for due process compliance. "We believe that R.C. Chapter 4141 faithfully contemplates that parties to these administrative proceedings have the right to a fair but informal hearing. Pursuant to the General Assembly's goal of providing a meaningful hearing, the board is granted wide discretion in the conduct of its hearings in order to ascertain the facts and determine the claimant's entitlement to benefits. R.C. 4141.28(J). The board is not bound by evidentiary or procedural rules in the conduct of hearings but rather is constrained by constitutional limits and statutory controls which safeguard the rights involved." Id. at 215-216. Therefore, we cannot say the trial court abused its discretion in finding that appellant's action did not meet this exception to the exhaustion doctrine.
 {¶ 15} The procedural posture of this appeal limits us to reviewing the issue of whether appellant has appealed a "final decision" on the matter of whether he had shown good cause for his failure to attend the telephone hearing. Indeed, appellant's initial filing with the trial court was captioned, "Appeal from Failure to Appear." Appellant's due process arguments focus on whether the failure to include documents in his claim file and the refusal to grant him an in-person hearing violated due process. These issues could have been addressed at the telephone hearing; appellant's failure to appear has eclipsed and precluded an appeal of other issues. As postured, the only matter appellant appealed for review in the trial court was whether he could demonstrate good cause for his failure to appear at the telephone hearing. If appellant had waited for the Commission to issue a determination on that issue, there would have been a "final decision" reviewable by the court. R.C. 4141.282(A). Although appellant is correct that the agency "cannot erroneously prepare an incomplete record and then take advantage of an error which it has created," Ray v. Ohio UC Bd. of Review (1993), 85 Ohio App.3d 103, 109, the errors which appellant raises with respect to the record are errors which appellant could have raised at the telephone hearing and which were within the power of the agency to determine. Once appellant failed to appear at his telephone hearing, the board was bound to dismiss his appeal and the only issue posed thenceforth was whether appellant could show good cause for that failure to appear.
 {¶ 16} Since there was no "final determination" of that issue — whether appellant had demonstrated good cause for failing to appear — the trial court correctly found that it lacked jurisdiction to hear the appeal. Appellant's third assignment of error, regarding the trial court's subject matter jurisdiction, is, therefore, not well-taken. His remaining assignments of error are therefore moot. Appellant is ordered to pay the costs of this appeal for which sum judgment is rendered against appellant on behalf of Lucas County and for which execution is awarded. See App. R. 24.
Judgment affirmed.
A certified copy of this entry shall constitute the mandate pursuant to App. R. 27. See, also, 6th Dist. Loc. App. R. 4, amended 1/1/98.
Singer, P.J., Skow, J., Parish, J. concur.
[1] "Pro se civil litigants are bound by the same rules and procedures as those litigants who retain counsel. They are not to be accorded greater rights and must accept the results of their own mistakes and errors." Meyers v. First Nat'l Bank (1981), 3 Ohio App.3d 209, 210.
[2] From our review of the record, it appears that this was the first and only time appellant had made this an assertion; he has not raised this as an issue in this appeal. "It is a general rule that an appellate court will not consider any error which counsel for a party complaining of the trial court's judgment could have called but did not call to the trial court's attention at a time when such error could have been avoided or corrected by the trial court." State v. Glaros (1960), 170 Ohio St. 471, paragraph one of the syllabus.
[3] Appellant cites this code section for this rule; however, the current version controlling the duty to make documentary evidence and the claim file accessible to claimants is O.A.C. 4141-27-09(C), which states:
"(C) For the purposes of division (C)(3) of section 4141.281 of the Revised Code, the "director's file" required to be included in the record on appeal shall include the following:
"(1) The determination or redetermination under appeal;
"(2) All information in the file pertaining to, or upon which, the determination or redetermination was based;
"(3) Any information, received by the director prior to the transfer of the request for redetermination/appeal to the commission, that relates to the facts or circumstances upon which the determination or redetermination was based."